## THE PEOPLE vs. ADAMS.

The jurisdiction of the courts of this state over crimes is limited to such as are committed within the boundaries of the state. *Per* BEARDSLEY, J.

But personal presence at the place where a crime is committed is not always essential to constitute the offender a principal, *e. g.* where it is perpetrated by means of an instrument, as by the discharge of a gun taking effect in another county, or by an innocent living agent.

Where the agent who does the act constituting the offence is himself guilty, he is the principal if it be a felony, and the employer is an accessory before the fact; but if it be a misdemeanor, both are principal offenders. *Per* BEARDSLEY, J.

In the case of the commission of an offence within this state by means of an innocent agent, the employer is guilty as a principal though he did no act in this state, and was at the time the offence was committed in another state.

The offence of cheating by false pretences is in judgment of law committed where the false pretences are successfully used and where the money or property is obtained, although the fraud originated and was contrived elsewhere.

Accordingly, where one was indicted in the city of New-York for obtaining money from a firm of commission merchants in that city, by exhibiting to them fictitious receipts signed by a forwarder in Ohio falsely acknowledging the delivery to him of a quantity of produce for the use of and subject to the order of the firm; and the defendant pleaded that he was a natural born citizen of Ohio and had always resided there, and had never been in the state of New-York, that the receipts were drawn and signed in Ohio, and that the offence was committed by their being presented to the firm in New-York by innocent agents employed by the defendant in Ohio; *held* that the plea was bad, and that the defendant was properly indicted in the city of New-York.

ERROR to the New-York general sessions. The defendant in error and one R. R. Seymour were indicted in the sessions for an offence against the statute (2 *R. S.* 677, § 53) for obtaining money and property by false pretences. The indictment contained seven counts, the first five, which are substantially alike, each set forth that the defendants intending to cheat and defraud Ferdinand Suydam and four other persons named, composing the firm of Suydam, Sage & Co. of the city of New-York, commission merchants, on &c. *at the first ward of the city of New-York in the city and county of New-York,* did feloniously &c. falsely pretend and represent to those persons that the defendant Seymour had received of the defendant Adams a very large quantity

of pork and lard, in good order, for and irrevocably subject to the order of said firm, and did then and there exhibit and deliver to the said firm a paper writing in the form of a receipt, signed by Seymour, which is set out. The paper is a forwarder's receipt dated at Chillicothe, January 11th, 1844, by which Seymour acknowledges that he has received from Adams several thousand barrels of pork and lard, which is particularly described, for and irrevocably subject to the order of Suydam, Sage & Co., which he agrees to forward and deliver to them in the city of New-York, they paying charges &c., and that they (S., S. & Co.) are to hold the property for sale on commission and to have a lien thereon for certain drafts drawn against it amounting to $28,160, and for their general balance against the consignor. The count alleges that S., S. & Co. believing the said false pretences and being deceived thereby, were induced to and did accept in writing five drafts drawn by Adams on them for the aggregate amount mentioned in the receipt, which drafts are set forth ; and that the defendants did "then and there" by means of such false pretences receive and obtain from S., S. & Co. the said acceptances, which the firm subsequently paid in full. It then negatives the pretences, averring that no such property was received by Seymour, that the receipt was fictitious and the statements therein utterly untrue, and that the defendants knew it. And so the jurors &c. say that the defendants on &c., *at &c.,* feloniously &c. did obtain the acceptances, and afterwards, on &c. the money payable upon them, with intent to cheat and defraud S., S. & Co. of the same, against the form of the statute &c. The two other counts are in a similar form, the receipt being for other property, accompanied by drafts for $12,200.

Adams appeared in person and put in a plea, by which, after protesting that he is not guilty of the offences charged in the indictment, nevertheless says "that he the said defendant was born in Ross county in the state of Ohio, of parents residing in and then being citizens of the state of Ohio, and from the time of his birth until the time of the exhibiting of this plea and for and during all the intermediate times he was and has been and still is a resident of, and in the state of Ohio ; that at the said

several times when the supposed offences set forth in the several counts of the said indictment were, as therein alleged, committed, he was not, nor was he at any time prior thereto in the said city, county or state of New-York ; that the said several writings called receipts and drafts, set forth in the said indictment, were all drawn, signed and made in the said county of Ross, and whilst he the said Adams was resident therein ; and that the said several receipts and drafts were by the said Adams presented in the city of New-York to the said persons so using the name, style and firm of Suydam, Sage & Co., *through the instrumentality of innocent agents employed by the said Adams,* whilst he the said Adams was and continued to be such resident of and personally within the said county of Ross in the state of Ohio aforesaid, and were in the said city of New-York presented to the said persons so using the name and firm of Suydam, Sage & Co., by the said Adams, through such innocent agents, and the said persons so using the name &c. then and there relying on the truth of the same were deceived and defrauded thereby ; and the said several supposed offences in the said several counts of the said indictment set forth were committed by him the said Adams in the said city and county of New-York, by his causing and procuring the same to be done therein as aforesaid, while he the said Adams was in the said county of Ross, in the state of Ohio aforesaid ; wherefore he the said Adams *ought not to be criminally questioned or proceeded against in the state of New-York for the said acts and offences so done by him and caused and procured to be done by him as aforesaid while he was so resident and being in the said county of Ross ;"* concluding with a verification.

The district attorney demurred to the plea, and the defendant joined in demurrer. The general sessions gave judgment against the people and discharged the defendant, and the district attorney in the name of the people brought error to this court.

*J. R. Whiting,* for the plaintiffs in error. The offence in this case was committed where the false pretense was used and where the money was obtained ; and the defendant was construc-

tively present where the offence was committed. (*The King* v. *Brisac*, 4 *East*, 164; *The People* v. *Rathbun*, 21 *Wend.* 509, 539; *Town of Barkhamsted* v. *Parsons*, 3 *Conn. R.* 1; *Commonwealth* v. *Gillespie*, 7 *Serg. & Rawle*, 579; *Rex* v. *Johnson*, 6 *East*, 583; *S. C.* 7 *id.* 68; *Commonwealth* v. *Harvey*, *Amer. Jurist*, vol. 8, p. 69.) The case of *The State* v. *Knight*, (*Taylor's N. C. Rep.* 65,) is not opposed to this doctrine. That state had passed an act making the offence of counterfeiting the current bills of the state indictable in its courts, though committed out of the state, and this the court refused to uphold. Here, however, the offence was committed within this state, though the offender was not actually here. If the rule were not as contended for by the prosecution, one standing in New-Jersey near the boundary, might shoot a citizen of this state and not be subject to punishment.

*Henry Stanbery*, for the defendant in error. This case presents the question whether a citizen of one state while actually present therein can be made liable to the criminal laws of another state for an act begun in his own state but consummated by his agents in the other. The several states of the union are sovereign and independent, except for national purposes. A citizen of one state owes no allegiance to the government of another while he remains at home. There is, it is true, a temporary and local allegiance when a citizen of another country comes here, which renders him amenable to the criminal laws for an act done during his residence within the limits of the state. The fact of allegiance, general or special, determines the question of liability to the criminal laws of a particular state. The prosecution in this case seeks to extend the criminal laws of New-York over a citizen of Ohio by the fiction of a *constructive presence*. This cannot be sustained. Allegiance is natural or local—the former every one owes to the country in which he was born; the other depends upon his being actually present in another state. One can no more owe a local allegiance to two states at the same time than he can be in two different places at the same moment. Ordinarily the actual presence of the of

fender in the state whose laws are violated is necessary, but this is not uniformly so ; for by the English law the allegiance of her subjects accompanies them wherever they go, and they are held responsible for the violation of English laws even when out of the realm. (*Story's Confl. of Laws,* § 22.) Pirates also, for peculiar reasons, are punishable by any government into whose hands they may fall. (4 *Bl. Com.* 71.) So local allegiance does not attach in all cases ; for ambassadors do not owe it to the governments to which they are accredited, and consequently are not punishable there for their crimes. (1 *Kent's Com.* 38.)

There is no distinction in this respect between crimes which imply a violation of the duty of allegiance, as treason, &c. and other criminal offences. In *The King* v. *Depardo,* (1 *Taunt.* 26,) the defendant was prosecuted under the 33 of Henry 8th, which gives jurisdiction to a special commission for offences committed abroad, for a homicide perpetrated near Canton upon an English subject ; and it was held that inasmuch as the defendant owed no allegiance to the English government, he could not be tried for the offence in England.

A further argument against the jurisdiction now claimed arises out of the consideration that there are no means of bringing the offender into this state to be tried and to receive punishment. The constitution of the United States and the act of congress relating to fugitives from justice, apply only to such persons as shall have "fled from justice and be found in another state." (*Const. U. S. art.* 4, § 2; 1 *Story's Laws,* 284.) To reach the case of this defendant, there must, in addition to a constructive presence, be a constructive flight. The prosecution must construe the defendant into the state for the purpose of committing the crime, and straightway construe him out of it for the purpose of reaching him as a fugitive.

The English authorities relied on by the prosecution all relate to the question of *venue,* as distinguished from the consideration of foreign allegiance and jurisdiction. *Rex* v. *Johnson,* was the case of an Irishman who owed allegiance to the king and obedience to the laws of England, who was indicted in

London for a libel written in Ireland and sent to and published in London. The offence was only a misdemeanor, in which all concerned are principals, and it was held that he was properly prosecuted in England. *The King* v. *Brisac,* was the case of a conspiracy to obtain money in London by false papers which were fabricated on board a British vessel on the high seas by the defendants, who were British subjects. The question was simply whether the offence was triable in the admiralty or the common law courts. There is no case where a Frenchman or other foreigner has ever been held liable to the criminal laws of England for an act done in his own country or consummated in England by his agency whilst he remained beyond the realm.

The American cases remain to be considered. *The Commonwealth* v. *Gillespie,* was a prosecution against a citizen of New-York for selling lottery tickets by an agent in Philadelphia. The defendant was held liable ; but it appeared that he was occasionally in Philadelphia arranging with his agent for the sale of tickets. What was said by *Duncan, J.* in giving the opinion of the court was a mere *obiter dictum.* In *The Commonwealth* v. *Harvey,* the defendant was indicted in Massachusetts for uttering a forged draft in Boston. The defendant forged the draft at Albany and placed it in the hands of a broker there, to be forwarded to the drawee in Boston, where it was paid and the proceeds remitted to the defendant, who did not go out of the state of New-York. The defendant was convicted. The consequence of this decision is, that the defendant would be liable to be punished in two different jurisdictions for the same offence of uttering a forged paper. The conviction in Massachusetts would not protect him if indicted in New-York, as the latter state would not regard the proceedings in Massachusetts ; whereas a conviction in one county would be a bar to a prosecution in another. In *The People* v. *Rathbun,* the defendant was indicted in the county of Genesee for uttering forged paper. He mailed the paper in the city of New-York to the prosecutor at Batavia. He was found guilty and the conviction was sustained. The remark of the learned judge who delivered the

The People *v.* Adams.

opinion of this court, that if the defendant were not held liable "one who was out of the state might send into it and administer poison with impunity," was obviously but a mere *dictum*, and was said simply for the purpose of illustration. Every act done by Rathbun was committed while he was within the state of New-York, and there was no question as to absence from the state. In the *Town of Barkhamsted* v. *Parsons*, the defendant was prosecuted for a penalty for violating a statute of Connecticut against bringing paupers into the latter state, and it appeared that the defendant, an inhabitant of Massachusetts, had sent a pauper into Connecticut by his son, remaining himself at home. He was held liable under the maxim *qui facit per alium, facit per se.* It is to be remarked, that the prosecution was not by indictment, but was a civil action for a penalty; that the offence was at most a misdemeanor, where there was never much strictness about venue; that the court does not refer to any authority to sustain its decision, and that the maxim referred to was misapplied, even if the act of the defendant had been done in another county in the same state; for the act of *procuring* a guilty agent to commit the offence was in itself a distinct misdemeanor, triable in the county where the procuring took place. But further, the court in which this case was adjudged does not pay any regard to state jurisdiction or state lines. In *The State* v. *Ellis,* (3 *Conn.* 185,) it was held that stealing a horse in Rhode Island and bringing him to Connecticut was a theft in the latter state. It was said it had always been so considered, and 1 *Mass.* 115, and 2 *id.* 14, to the same effect, were cited. These cases proceed upon the idea that the common law doctrine respecting counties applies to the several states of our union. This is clearly erroneous. (*See note to* 1 *Mass.* 116; 2 *John.* 477; 11 *Wend.* 129; *and* 2 *R. S.* 698, § 4.) *(a)* But these cases are not strictly applicable to the question under consideration, for the defendant does come within the territory of the state where he is prosecuted, and thus ren-

---

*(a)* See also *Simmons* v. *The Commonwealth*, (5 *Binney*, 617 ﹨

ders himself amenable to its laws. The important objection of a foreign jurisdiction and the want of allegiance could not arise.

The doctrine upon which the defendant insists has been recognized in several cases. In *Ex parte Smith*, (6 *Law Reporter*, 57,) it appeared by the return of a *habeas corpus* issued by the circuit court of the United States for Illinois, that Smith was in custody upon a requisition of the governor of Missouri, charged with being accessory before the fact to an assault with intent to kill committed by one Rockwell in Missouri, Smith not having been personally in that state. He was discharged on the ground that he owed no obedience to the laws of Missouri, and that the only right which the citizens of that state had was to insist that Illinois should compel her citizens to forbear to annoy her. In *The State v. Knight*, ( *Taylor's N. C. Reports*, 65,) the defendant was indicted under a statute of that state for counterfeiting out of the state with intent to defraud the citizens of the state. He was found guilty, but upon full consideration the court refused to render judgment and discharged him. Taylor J. in giving the opinion of the court said : "The states are to be considered with respect to each other as independent sovereignties possessing powers completely adequate to their own government; in the exercise of which they are limited only by the nature and objects of government, by their respective constitutions and by that of the United States. 'Crimes and misdemeanors committed within the limits of each are punishable only by the jurisdiction of that state where they arise; for the right of punishing being founded only on the consent of the citizens express or implied, cannot be directed against those who never were citizens, or who likewise committed the offence beyond the territorial limits of the state claiming jurisdiction."

There are many decisions denying to the penal laws of a country an extra-territorial effect. In *Folliott* v. *Ogden*, (1 *H. Bl.* 123,) the court of common pleas in England refused to give effect to an act of attainder of the state of New-York, by force of which the bond upon which the plaintiffs sued was vested in the people of this state. See also *Mostyn* v. *Fabrigas*, ( *Cowp.*

161, 176, *per Lord Mansfield ;*) *Commonwealth* v. *Green*, (17 *Mass.* 515 ;) *Steeles* v. *Smith*, (*Law Reporter*, vol. 7, p. 461.)

It is argued that unless the jurisdiction here assumed is sustained, there will be a failure of justice where a crime is committed in one state by the instrumentality of a person residing in another; and the extreme case is put, of a person shooting another across the boundary line of a state. We deny that the offence is commited where the act is consummate, even where the question is one of mere venue. By the common law the jury cannot inquire of an act done out of the county for which they sit. The English books are full of cases where there has been a failure of justice from this cause, and the remedy has been from time to time provided by act of parliament. Treasons committed out of the realm, murders by a subject committed abroad, offences committed on the borders of counties and on roads, &c. passing through several counties, are instances of this class of cases, where the legislature has interposed to prevent a failure of justice. In *The King* v. *Alsop*, (1 *Show.* 339,) where an offence was committed by shooting a gun from one county to another, it was held that the offender must be indicted in the county where the offender stood. (*See also Grosvenor* v. *The Inhabitants of St. Augustine*, 12 *East*, 244.) In the case supposed of a person in New Jersey shooting a citizen of New-York across the boundary, that crime should unquestionably be punished. By the common law, the courts of New Jersey would have jurisdiction, or, if there is any doubt of this, that state should have a statute adapted to the case. This state can protect her own citizens by requiring other states to punish such offenders.

If the jurisdiction claimed by the prosecution is sustained, it will be subversive of state sovereignty. A citizen may be punished for an act commenced in his own state and entirely innocent by its laws; but which being consummated in another state through the mail or some other innocent agency, and being in violation of some positive law of the latter, of which he was in complete ignorance, will subject him to arrest as a fugitive, and to punishment by a foreign law to which he never owed obe-

dience. This could not be tolerated even if limited to offences *malum in se* and those which are punishable every where ; but the principle would equally extend to misdemeanors, and offences created from motives of local policy. This court has decided that the power to demand fugitives under the act of congress extends to misdemeanors, (*Ex parte Clark,* 9 *Wend.* 221,) and if the prosecution in this case shall prevail, the laws of the several states prohibiting by penal laws the passing of bank notes of particular denominations, may be executed against citizens of states which have no such laws, but who, for purposes of business, have remitted the proscribed bills to places where these laws prevail ; and so of a large number of other cases.

The doctrine is still more startling when its application is considered in reference to the states where slavery exists, and where very severe laws are in force against whatever may tend to excite the slave to resistance. A paper or pamphlet sent by mail may bring the party sending it within the operation of these laws, to which he never by any implication assented, and which he may never have heard of.

It is submitted that the considerations which have been urged are conclusive to show that the plea is a perfect answer to the indictment.

*G. Wood,* (same side.)

*Ogden Hoffman,* in reply. 1. It is evident from the language of the statute, that the offence was committed at the place where the money was obtained. "Every person, who with intent," &c. "*shall obtain,*" &c. "shall be punished," &c. The offence is *obtaining* the money or property or the signature to a written instrument ; and this takes place when and where the person defrauded parts with his property to or for the use of the offender. Upon general principles of law also, an offence consisting of several parts is committed where the enterprise is consummated. In usury it is where the money is received ; (*Fisher* v. *Beasley, Doug.* 235 ; *Scott* v. *Brest,* 2 *T. R.* 238 ; *Scurry* v. *Freeman,* 2 *B. & P.* 381 ;) and so in cases

of embezzlement, (3 id. 596 ; 2 Leach, 974 ;) and in indictments for conspiracy to obtain money, (The King v. Brisac, 4 East, 164 ; People v. Mather, 4 Wend. 229, 259 ; Rex v. Watson, 1 Camp. 215.) If a man on shore kill another on the high seas, it is of admiralty jurisdiction. (Coombes' case, Leach's C. L. 432.) So if one standing in one county shoot across the county line and kill another in a different county, it is murder in the latter county. (1 Chitty's Cr. L. Riley's ed. 148 ; The King v. Brisac, supra ; Rex v. Johnson, 6 East, 583 ; Rex v. Munton, 1 Esp. 62.) The case of Rex v. Alsop, (1 Shower, 339,) cited for the defendant, is not, when properly understood, hostile to this doctrine. The indictment was under a statute making it an offence to shoot with hail shot. The case turned on the effect of the word shooting, which was a single act and could be performed only where the offender stood.

2. The crime having been committed here, and by means of an innocent agent, the employer therefore, though absent, is principal offender, and is deemed to have been personally present. To assert the contrary is to hold that there may be a crime without a criminal. The innocent agent is not, of course, an offender, and if the guilty procurer is not, there is no one culpable, though there is a conceded crime. But it is clear upon authority that the employer is a principal offender. "If A. lets out a wild beast so that any is killed, A. is principal though absent, for the instrument cannot be a principal." (1 Hale, P. C. 615.) So if one lays poison by which another take it and is poisoned, he is a principal where the poison is taken. (Foster's C. L. 349, and see also 1 Hale, 514 ; Dalton's Justice, C. 105, 529 ; The King v. Girdwood, Leach, 169 ; Starkie's Cr. Pl. 26 ; 1 Ch. Cr. L. 191 ; 2 East, P. C. 1120 ; 1 Leach, 142.) The same principle was distinctly recognized in The People v. Rathbun, (21 Wend. 528.) In misdemeanors the procurers are guilty as principals, whether the immediate agent be guilty or innocent, but in felonies if the offence is committed by a guilty agent, the procurer is an accessory before the fact; if by an innocent agent, he is a principal. This is abundantly shown by the authorities referred to. In the latter case, which is the one

under consideration, he who procures the act to be done is in judgment of law present at its commission, and he will not be permitted to deny that he personally committed it at the place where it was done, the maxim being *crimen trahit personam*.

3. It is, however, contended that the principle does not apply where the person sought to be charged was not, when the act was committed, a citizen of the state or resident within its territory. It is said that in order to be amenable to our laws he must owe a natural allegiance to the government by reason of his birth in the state, or a temporary or local allegiance arising out of his residence here when the act was done. It is submitted that no such exception exists upon principle or authority. The cases referred to in the opening argument do not proceed upon the ground of allegiance, but upon the principle before laid down; and in none of them, with a single exception, was the distinction insisted on by counsel or considered by the court. The cases, it is argued, only settle *venue*. What is venue? It is not merely the determination of the place of trial upon motives of expediency or convenience, but the judgment of the court as to its jurisdiction over the offence and the offender. One who in judgment of law is absent from the county when an offence is committed, cannot be tried in that county, whether he be in an adjoining county or in another state or country. On the other hand, if in judgment of law he is present at the commission of the offence, notwithstanding his actual personal absence from that place, he is triable there; and it is equally immaterial whether such absence is in an adjoining county or beyond the boundaries of the state. The single inquiry is, did the accused commit the offence within the county—in fact or in contemplation of law? This determines his liability to trial and punishment here. It has been shown upon well settled principles and abundant authority, that the defendant committed the offence charged in the city and county of New-York. This alone gives the court below jurisdiction.

Allegiance is immaterial, unless the crime charged involves a breach of allegiance. "Allegiance is the tie or *ligamen* which binds the subject to the king in return for that protection which

the king affords the subject." (1 *Bl. Com.* 366.) In treason and crimes in the nature of treason, the breach of allegiance is the essence of the offence, and to render the offender liable he must owe allegiance; and hence indictments for these offences, and these only, conclude *contra legeantiæ debitum suæ.* (4 *id.* 71.) The doctrine of allegiance is sometimes resorted to, to extend the jurisdiction of the court to a particular class of offenders, or to characterize and 'add enormity to another class; but the absence of that obligation has never been invoked to give impunity to a criminal otherwise punishable. Allegiance may give the court jurisdiction over an offence committed beyond the territory of the government for which it sits; but the want of it can never be a defence against a prosecution for a crime committed within its limits. Instead of inquiring of us for an instance where in a case like this a conviction has been had, the defendant's counsel should himself have cited one where a person guilty in this manner had been discharged upon the defence now interposed. Sir Michael Foster, in his discourse on high treason, after showing that ambassadors and spies taken in time of war cannot be convicted of that offence, for the reason that they owe no allegiance to the state, proceeds thus: "But for murder and other offences of great enormity, which are against the light of nature and the fundamental laws of all society, the persons mentioned in this section [that is, persons owing no allegiance] are certainly liable to answer in the ordinary course of justice, as other persons offending in the like manner are. For though they may be thought not to owe allegiance to the sovereign, and *so to be incapable* of committing high treason, yet they are to be considered as members of society, and consequently to be bound by that eternal universal law by which all civil societies are kept together." (*Foster's C. L.* 188.) The late Mr. Justice Cowen evidently understood the law to be as we contend it is. In *The People* v. *Rathbun,* speaking of the effect of a contrary rule he says: "In that way *one who is out of the state* may send into it and administer fatal poison with impunity to every one concerned: for the innocent agent could not be punished. So of uttering forged paper through the post

The People v. Adams.

office. The venue must be laid where the letter is delivered, and the offender cannot be allowed to gainsay the fact that he was personally present and himself committed the crime where it is received. *The same rule* obtains between county and county." (21 *Wend.* 540.) In *Rex* v. *Johnson*, the point upon which the defendant's counsel rely in the case under consideration, was distinctly taken on behalf of the accused. His counsel contended that the defendant was commorant in Ireland before and at the time of the commission of the offence, and that he was an Irishman and owed no allegiance to English laws. But Lord Ellenborough said the argument rested wholly on the supposition that the defendant owed no obedience to the laws of this part of the united kingdom, and therefore had been guilty of no crime against them. "Such a defence," he said, "if it could be in any form available at law, is matter of absolute bar." The case went off on other grounds, and when finally tried, this defence appears to have been abandoned, although he was defended by very distinguished counsel and was himself a justice of the common pleas of Ireland. (7 *East*, 68.) In *The United States* v. *Davies*, (4 *Sumner*, 485,) the defendant was accused of shooting from an American ship and killing a man on board a foreign schooner. Mr. Justice Story said, " the act was, in contemplation of law, done where the shot took effect. He would be liable to be punished by the foreign government;" though in the particular case he refused to give him up for trial. The reasoning of Mr. Justice Cowen in *The People* v. *McLeod*, (25 *Wend.* 483,) is strongly in affirmance of the principle for which we contend. "I entertain no doubt (he said) that whenever an indictment for a murder committed within our territory is found, and the accused is arrested, these circumstances give complete jurisdiction." (*Id. p.* 601.) There could be no pretence that he owed allegiance to or was under the protection of our government. He came in the teeth of allegiance and was tried because he had committed a crime over which the court had jurisdiction. In another place he says: " Suppose a prisoner of war to escape, and that on his way home and before he crossed the line, he should set fire to a farm house in the

night and kill the inmates; is there a doubt that he might properly be convicted of arson and murder?" (*Id. p.* 602.) What allegiance is due from a prisoner of war, who claims no protection, which is its price, and whose residence here is compelled by the power which claims the right to punish him?

While the defendant's counsel has failed to produce a case in which the principle for which he contends has prevailed, we are enabled to furnish the three following adjudications, each of which is directly in point. In *Barkhamsted* v. *Parsons*, (3 *Conn.* 1,) the defendant sent a pauper from Massachusetts, where he resided, into Connecticut, by his son, a minor, contrary to a penal statute of the latter state. The same defence set up in the case before the court was made and overruled. Hosmer, C. J. said : "He who does an act in this state by his agent, is considered as if he had done it in his own proper person."

In *The Commonwealth* v. *Gillespie*, (7 *Serg. & Rawle*, 469,) selling lottery tickets in Pennsylvania by a person residing in New-York, through the agency of a clerk, was held to subject the offender to indictment in Pennsylvania.

*The Commonwealth* v. *Harvey*, (8 *Amer. Jurist*, 69,) was decided by a criminal lawyer of great learning and experience. An indictment was found in Massachusetts against a resident of New-York for uttering forged notes in the first mentioned state, through an innocent agent, the defendant all along remaining in New-York. The case was very fully considered, and Judge Thatcher, in accordance with the doctrine for which we contend and upon the authorities upon which we rely, held the defendant guilty in Massachusetts.

The case of *The State* v. *Knight*, (1 *Taylor's N. C. Rep.* 6,) referred to on the other side, is entirely inapplicable. A law that obtaining money by false pretences in Ohio, or that the commission of any other crime there, should be punishable here, could not be supported. The prosecution does not contend for such a doctrine. But such was the case in North Carolina. The case cited from 6 *Law Reporter*, 66, is of the same character, and both cases affirm the principle for which we contend—that crimes committed within the state are punishable there, whether

committed by citizens or strangers. The cases of *Scoville* v. *Canfield*, (14 *John.* 338,) and *The Commonwealth* v. *Green*, (17 *Mass.* 515,) are, it is submitted, quite foreign to the present discussion. In the first, it was held that penal laws have no extra territorial effect, and in the other, that one state will not inflict the punishment which another government has affixed to a crime committed and prosecuted within its limits, though such punishment be a disqualification to exercise some of the ordinary rights of a citizen.

The citizens of each state are entitled to all the privileges and immunities of citizens of the several states. (*Const. of the U. S. art.* 4.) If entitled to the privileges, ought they not also to be liable to the penalties incurred by violations of the law of any state when committed within its territory, though they may reside in another state? If the several states of the union were foreign states, a citizen of one who should violate the laws of another state ought upon the principles of the law of nations to be punished. Judge Story says that international law is based upon the doctrine that each nation ought to render justice to every other, in order that it may receive justice in return. (*Confl. Laws, p.* 34.) The reason applies with greater force to states owing obedience to the same constitution, of like interests—of like " privileges "—of like destiny.

We contend for nothing which would impair the sovereignty of Ohio. We can enforce nothing against her; but if her citizens forsake the sphere of their allegiance and her protection, and reach out their arms to violate our laws, the " protection " due to our own citizens as the price of *their* allegiance, demands that such violators be punished; and to deny them such protection would be to sever the ties which bind our people to their government.

An argument against the jurisdiction now claimed is attempted to be drawn from the provisions of the federal constitution respecting fugitives from justice; and extreme cases are put of executive requisitions by which persons may be taken from the state in which they reside to answer for offences merely *malum prohibitum*, created by statutes founded on local policy, of the ex-

istence of which they had never heard. It may be that the executive of the state to which the requisition is sent ought to hesitate where the offence is of the character referred to ; but no evil need be feared where the remedy is applied to offences against the fundamental laws of all society. In respect to offences like this, against common honesty and the institutions of all civilized nations, the offender has a monitor within, to afford him all needful information of the provisions of the code which he is accused of violating.

*By the Court*, BEARDSLEY, J. The intent to cheat and defraud, and the falsity of the pretences, as alleged in the indictment, are virtually conceded, for they are not denied by the plea. And the acts alleged to be criminal are expressly admitted to have been done and committed by the defendant in the city of New-York, through the instrumentality of innocent agents, the defendant at that time being in the state of Ohio. No question was made on the argument, as to the form of the indictment or the plea ; and the only point to be decided is whether here was an offence committed by the defendant " within the boundaries of this state." (2 *R. S.* 697, § 1.) If so, he may be tried and punished here ; but if not, he is entitled to an acquittal, however infamous the fraudulent transaction to which he was a party may have been.

The crime charged in this indictment is a statute offence. Suydam, Sage & Co. were induced by false and fraudulent pretences to sign certain written instruments, and to part with large sums of money. The fraud may have originated and been concocted elsewhere, but it became mature and took effect in the city of New-York, for there the false pretences were used with success, the signatures and money of the persons defrauded being obtained at that place. The crime was therefore committed in the city of New-York and not elsewhere. (2 *R. S.* 677, § 53 ; 1 *Chit. Cr. Law*, 4*th Amer. ed.* 191 ; *Rex* v. *Buttery, mentioned by Chief Justice Abbott in The King* v. *Burdett, 4 B. & A.* 95.) And of this crime, thus committed within the limits of this state, taking the facts charged and admitted to be true, the defendant,

in my opinion, was plainly guilty, although at the time of its perpetration he was out of this state and within the limits of the state of Ohio.    The intent to cheat was his; the fraudulent contrivance was his; and by agents, acting within this state, for him and under his authority and guidance, themselves innocent of all fraud, were the false pretences used and the crime fully consummated.    He and he alone was therefore the guilty party.

This conclusion is certainly sound in morals and reason, and it should be so in law.    The immediate actors in effecting the fraud were entirely guiltless: they were but instruments in the hands of the defendant, and wholly unconscious of the part they were made to perform in his guilty plot.    A great fraud was thus perpetrated in this state, and maimed or impotent indeed must our law be, if the contriver of the mischief, by whose efforts alone the cheat was effected, can escape punishment on the ground that he was out of the state when his fraudulent machinations were concocted, and when they took effect within it.

Personal presence, at the place where a crime is perpetrated, is not indispensable to make one a principal offender in its commission.    Thus, where a gun is fired from the land which kills a man at sea, the offence must be tried by the admiralty and not by the common law courts; for the crime is committed where the death occurs, and not at the place from whence the cause of the death proceeds.    And on the same principle an offence committed by firing a shot from one county which takes effect in another, must be tried in the latter, for there the crime was committed.    (1 *Chit. Cr. Law,* 155, 191; *United States v. Davis,* 2 *Sum.* 485.)    In such cases the offender is an immediate actor in the perpetration of the crime, although not personally present at the place where the law adjudges it to be committed.    He is there, however, by the instrument used to effect his purpose, and which the law holds sufficient to make him personally responsible at that place for the act done there.

But crimes may be perpetrated through the instrumentality of living agents in the absence of the principal, and our law books are full of such cases.    Where poison is knowingly sent to be administered as medicine, by attendants who are ignorant that

The People *v.* Adams.

it is poison, and death ensues, the person who thus procures the poison to be taken is guilty of murder. So where a child without discretion, an idiot or a madman, is induced by a third person to do a felonious act, the instigator alone is guilty, and although not present at the perpetration of the crime, he is a principal felon. (*Foster's Cr. L.* 349; 1 *Hale's P. C.* 617; 1 *Ch. C. L.* 191; 1 *Curw. Hawk. P. C.* 92; *Regina v. Michael,* 9 *C. & P.* 356; *Commonwealth v. Hill,* 11 *Mass.* 136; *Stephens' Cr. L.* 7, 141.) This is on the common law principle, *qui facit per alium, facit per se,* which according to the late Chief Justice Hosmer of Connecticut, " is of universal application, both in criminal and civil cases." (*Barkhamsted v. Parsons,* 3 *Conn.* 8.) In misdemeanors and in civil transactions the remark is undoubtedly correct, as it also is in felonies where the agent is himself innocent. But where the agent is a guilty actor in the commission of the felony, the law makes him the principal offender, and the one by whom he was employed or instigated, is, if absent, but an accessory before the fact. With this qualification, what was said by the late learned chief justice is believed to be strictly correct.

That such is the rule where both principal and agent, at the time when the crime was perpetrated, were in the same state, although in different counties, was not denied on the argument, nor does it admit of a question. It was however urged, that the rule was otherwise where they were in different states and consequently under the immediate authority and jurisdiction of different systems of law. But this difference in matter of fact lays no foundation for a difference in principle. We were not referred to, nor have I found an adjudged case, or the dictum of an elementary writer, which gives the least countenance to it. On the contrary, it has been repeatedly overruled and disregarded by judicial tribunals of the most exalted character for learning and wisdom.

The case of *The King* v. *Brisac and Scott,* (4 *East,* 164,) is directly in point. It was an information against the captain and purser of a British man of war, for a conspiracy to cheat the crown by means of false vouchers. The trial was in the county

The People *v.* Adams.

of Middlesex, and it appeared that " all the acts in which either of the defendants *immediately* took a part were done by them either on the high seas at Brassa Sound, or at Lerwick in the Isle of Shetland. The only acts proved to be done in Middlesex, were those which were done by them *mediately,* through the intervention of *innocent* persons." Upon this it was objected that " all the acts of the defendants themselves which constituted the offence of conspiracy were committed out of the jurisdiction of the common law." Grose, J. delivered the opinion of the court on this point, which was that the acts done by the agents of the defendants in Middlesex were their acts done in that county. "I say," said he, "it was *their* acts, done by them both; for the persons who innocently delivered the vouchers were mere instruments in their hands for that purpose; the crime of presenting these vouchers was exclusively *their own,* as the crime of administering poison through the medium of a person ignorant of its quality would be the crime of the person procuring it to be administered."

*The King* v. *Johnson,* (6 *East,* 583, 7 *id.* 65,) was determined on the same principle. The defendant was indicted in Middlesex in England, for procuring a libel to be published in that county, he being when it was procured to be so published and at the time of its publication, as well as when he wrote it, in Ireland. But although the defendant had personally done nothing in Middlesex or in England, he was notwithstanding, held to be liable for the publication in that county, and was accordingly found guilty by the jury. There are various other cases in England and in this country, determined on the same principle. (*Rex* v. *Munton,* 1 *Esp.* 42; *Barkhamsted* v. *Parsons, supra; The Commonwealth* v. *Gillespie,* 7 *S. & R.* 477, 478; *United States* v. *Davis, supra; The case of George* v. *Hervey,* 8 *Amer. Jurist,* 69.) And to the same effect are the views of the late Mr. Justice Cowen as expressed in Rathbun's case. (21 *Wend.* 528 *to* 541; *see also Stark. on Crim. Pl.* 24.) And the principle is too reasonable and just of itself, and too well sustained by adjudged cases, to admit, in my judgment, of any serious doubt.

This in no sense affirms or implies an extension of our laws beyond the territorial limits of the state. The defendant may have violated the law of Ohio by what he did there, but with that we have no concern. What he did in Ohio was not, nor could it be, an infraction of our law or a crime against this state. He was indicted for what was done here, and done by himself. True, the defendant was not personally within this state, but he was here in purpose and design, and acted by his authorized agents. *Qui facit per alium facit per se.* The agents employed were innocent, and he alone was guilty. An offence was thus committed, and there must have been a guilty offender; for it would be somewhat worse than absurd to hold that any act could be a crime if no one was criminal. Here the crime was perpetrated within this state, and over that our courts have an undoubted jurisdiction. This necessarily gives to them jurisdiction over the criminal. *Crimen trahit personam.*

For all civil purposes a person out of this state may act by procuration within its limits, and thus, although absent at the time, he may become subject to the state law. Rights may thus be acquired by the absent party; as he also may become civilly liable under the law of this state, for what is done here by his authorization and procurement. The individual remedy, in such case, is perfect; and if the criminal law of the state is thus violated, why should not the absent offender be responsible criminally, when afterwards found within the state?

In authorizing another to act for him, the principal, so far voluntarily submits himself to the law of the place where the authorized act is to be performed. This is confessedly so for all civil purposes. If an act thus authorized results in wrong to an individual, his right to redress against the principal, though absent, is undoubted. As to the person injured, the local law was violated by the absent wrongdoer; and if the act done was also a violation of the local criminal law, is the author and procurer of the deed guiltless? Does the law hold him to have been within its jurisdiction so far as respects the civil remedy, but not for the purpose of punishment? I see no ground on which the distinction can be sustained. An absent

The People *v.* Adams.

party procures an act to be done within this state, and so far as respects criminal or civil responsibility, I think he should not be allowed to say he is not amenable to the law. He clearly would be so if the act had been done by himself in person within the limits of the state, and it is precisely the same if done by an innocent agent.

Upon the facts conceded by the plea in this case, no one can entertain a doubt that the defendant is civilly liable to Suydam, Sage & Co., for the wrong done to them. But upon what principle except that what he did was a violation of the law of this state? What was done by the agents of the defendant must be deemed his act, or he broke no law of this state; and if our law was not violated, no wrong was done to Suydam, Sage & Co. But if the fraudulent acts done in New-York are to be deemed the acts of the defendant, then he did what the law declares to be a felony, and for which he was consequently indictable. I certainly should not be for holding the defendant responsible civilly, for this act, if he ought to be held guiltless of any crime. If he broke the law at all, he did so for all purposes, criminal as well as civil. It was a crime against the state as well as a wrong done to individuals, and the perpetrator should be held responsible in both respects. Civil redress for this violation of our law would be afforded by the courts of Ohio, as well as of New-York : but the criminal law of a state can be enforced only by its own tribunals. The matters pleaded in this case are, in my opinion, no answer to the indictment. Conceding every fact alleged in this plea to be true, still the defendant may have been guilty of the crime charged against him.

The judgment should therefore be reversed and judgment rendered for the people on the demurrer.

Judgment accordingly.