Oket, J.
1. The writ 'of habeas corpus was obtained during the pendency of the examination of Nolze, under the act of 1875. That statute is set forth at large, ante, 65. In Ex parte Ammons, decided in 1877 (ante, 518), it was held that the act is valid, in so far as it is an enactment in aid of the constitutional provision and tlie act of congress. How far the statute is valid, and what construction it should receive, in other respects, was not determined. In effect, however, it confers on the accused, without any application therefor on his part, all the benefit he could derive from a writ of habeas corpus issued under our statute on that subject. (75 Ohio L. 754.) But the act of 1875 could not, without violating the provisions of the constitution of the United States, relating to fugitives from justice, secure to *523 him any greater right or privilege than is guaranteed by the proceeding in habeas corpus.
The records in the two cases were, by consent, blended together, and the same facts appear in each case. There was no irregularity in hearing the cases together. While we are not clothed with power to review the proceeding under the act of 1875 — certainly not where the supposed error only appears, as here, by bill of exceptions (Sheldon v. McKnight, ante, 316) — the fact is immaterial in this case, for our right to review the proceedings on the writ of habeas corpus is unquestioned. 75 Ohio L. 758, § 26.
2. It is ordained, in the constitution of the United States,, that “ a person charged, in any state, with treason, felony, or other crime, who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime.” (Const., art. 4, § 2.) These words taken, as they must be, in their natural and obvious sense, do not include a case of constructive presence in the demanding state and constructive flight therefrom, but relate only to a case where the accused is actually present in the demanding state at the time he commits the act of which complaint is made. That is the construction which congress placed on the provision by the act of 1793 (1 Stats, at Large, 302), which has remained in force, without material change, to the present day. (U. S. Rev. Stats., § 5278). The rule applicable to constitutions, as well as statutes, which may be properly invoked in this case, is that, where the language is clear, there is no room.for construction; and the spirit of a provision must be extracted from its words, and not from conjectures aliunde.
3. The governor of a state, in issuing his warrant of extradition of a fugitive from justice, acts in an executive, and not in a judicial capacity. He is not permitted to try the question whether the accused is guilty dr not guilty; he is not to regard a departure from the prescribed forms for making the application, or as to the manner of eharg *524 ing the crime, in any matter not of the substance; and he is not to be controlled by the question whether the offense is or is not a crime in his own state, the inquiry being whether the act is punishable as a crime in the demanding state. Nor have the courts larger powers, in any of these respects, than the governor. Work v. Corrington, Ex parte Sheldon, ante, 64, 319; The People v. Brady, 56 N. Y. 182. But whether or not the accused committed the acts complained of while actually present in the demanding state, is jurisdictional; and it is clearly competent, in such case, to show by parol evidence a defect in the executive power, however regular the extradition papers may be in matter of form. In Jones v. Leonard, 19 Albany L. Jour. 112, the Supreme Court of Iowa decided these questions in the same way, and Dr. Spear, in liis valuable woi’k on the subject, strongly opposes the view of constructive presence in and flight from the demanding state. Spear on Extradition, 306.
4. There is no conflict in the testimony that Nolze’s statements were all made in this state to an innocent agent of Simpson & Co. Whether obtaining goods in that manner could constitute an offense in New York, is a question which we do not determine. See The People v. Adams, 3 Denio, 190; s. c., 1 Comst. 173 ; State v. Wyckoff, 2 Vroom, 65 ; R. v. Keyn, Law Rep. 2 Ex. D. 63, 232, 237 ; 4 South. L. Rev. N. S. 676, 702; Norris v. The State, 25 Ohio St. 217.
When one actually present in this state obtains, by false pretenses, through either a guilty or an innocent agent, goods from a person in another state, there can be no question that the offender should be punished. Neither congress nor our state legislature has attempted to provide for sending such person out of his state for trial and punishment. We express no opinion on the question whether such provision could or should be made. But there can be no doubt as to the power to punish such offender in this state, under a statute sufficiently comprehensive in its terms. It is now provided by statute that, “whoever, with firearms, or by sending poison or other thing, or by other means, kills or *525 injures any person in another state, . . . shall be tried and punished in the county where the offender was at the time the poison or other thing was sent, or the force was used.” (74 Ohio L. 334.) There would certainly be no impropriety in extending this provision, in terms, to the ease of one who, being actually present in this state, obtains goods from a person in another state, by false pretenses. Possibly the provisions of our present statute (75 Ohio L. 562) may extend to such a case, but that is also a question which we need not decide.
Judgment affirmed. •