## SUPREME COURT.

### THE PEOPLE agt. EDWARD HALL.

*Indictment — an accessory before the fact must be indicted in the county where the offense was committed — who principal, and who accessory — Criminal law.*

H. and G. were both residents of New Jersey. H. suggested to G. a plan for making some money, to which G. assented, which culminated in the production, by H., of twenty forged and counterfeited Greene county bonds. These he directed G. to take up the Hudson river to the river towns and counties to negotiate, he, in New York city, furnishing G. with the money to pay expenses. G. takes the bonds to Poughkeepsie, where he attempts to negotiate the bonds through a broker, who goes with G. to Catskill, Greene county, where the bonds are pronounced counterfeit, and, on his return to Poughkeepsie, he is arrested on a warrant issued in Greene county, brought to Greene county, indicted and placed in jail. He discloses H.'s connection with the matter; his testimony is given before a grand jury, of Greene county, and this indictment is found against H.:

*Held,* that H., if held at all, could only be held as an accessory, and could not, therefore, be indicted in Greene county.

Where the agent is a guilty actor in the commission of the felony, he, the agent, is the principal offender, and the one by whom he was employed or instigated, if absent, but an accessory before the fact. Where the

The People agt. Hall.

person employed is guilty, he is the principal, and the employer an accessory.

An accessory before the fact cannot be indicted in Greene county, when his offense was committed in the state of New Jersey — possibly in the city of New York. An accessory can only be indicted and tried in the county where his offense was committed, although the principal offense was committed in another county.

*Greene County Oyer and Terminer, July,* 1879.

*John C. Griswold* and *Sidney Crowell,* for prisoner.

*E. Raymond,* district attorney.

OSBORN, *J.*— The learned counsel for the defendant moves for his discharge, on the ground that from the evidence it appears that whatever has been done by him was without the county of Greene; hence that there is no authority for indicting or trying him here.

There are five counts in the indictment. In one or more of these counts Hall is charged as principal, in others as an accessory before the fact. The indictment is against the defendant and one William George, and in the count or counts charging Hall as an accessory before the fact, George is charged as principal.

The question now presented is, can Hall be convicted in this county, either as principal or as an accessory before the fact ? Of course, in determining these questions intelligently, we must look to the facts as disclosed by the testimony given by the prosecution.

In July, 1878, it would seem that both Hall and George were residents of the state of New Jersey. They had been well acquainted for a number of years. George lived on Jersey City heights, while Hall lived inland from Jersey City eight or ten miles. It appears that Hall was in the habit of being and staying with George, and at his house frequently ; had a room there and was at liberty to come and go when he pleased. In July, Hall suggested to George a plan for mak-

ing some money, to which George- assented, which, in a few days, culminated in the production by Hall of twenty forged and counterfeited Greene county bonds of the denomination of $500 each. These he directed George to take up the Hudson river and to the river towns or counties to negotiate. In a day or two, in the city of New York, he gave George thirty dollars to meet traveling expenses, and George started on his mission. He visited several places but returned in a few days to his home in New Jersey without accomplishing any thing. Again the two meet in New York and Hall furnishes thirty dollars for the same purpose and with similar instructions. George returns a second time unsuccessful, insisting that he cannot sell the bonds unless he is identified. The two then agree that money shall be placed in some bank, a bank in Great Barrington, Massachusetts, and in this way George is to identify himself. Hall raises $700 in New York and gives it to George for this purpose. George takes it and goes to Great Barrington, deposits it in a bank and takes the usual bank book. Before leaving Great Barrington Hall goes there and finds George and gets $200 of this money, which George draws out by his check and gives to him. The two then start from Great Barrington and come together to Millerton, Dutchess county, where Hall leaves George and goes back to New York or New Jersey and George comes to Poughkeepsie to meet a Mr. Hill, a broker, to try and dispose of these bonds. This Mr. Hill, George had seen on the subject of these bonds, on one or both of the prior occasions when George came up the Hudson river, as before stated, but would make no arrangement with George till he, George, was identified. George and Hill meet in Poughkeepsie, agree upon the price to be paid for the bonds, or a portion of them, provided he, Hill, is satisfied of their genuineness. During the negotiation George comes to Catskill, goes to the Tanner's Bank, and finds the treasurer of Greene county, shows him one or more of these bonds, which the treasurer pronounces genuine. He then returns to Poughkeepsie, tells the broker, Hill, there,

what he has learned at Catskill; but, this not being satisfactory, the two return to Catskill, and, upon the second presentation of the bonds to the treasurer, they are discovered to be counterfeits. Hill and George return to Poughkeepsie, and there George is arrested on a warrant issued in Greene county, brought to Greene county, indicted and placed in jail, where he has since remained. After a time he discloses Hall's connection with the matter; his testimony is given before a grand jury of Greene county, and this indictment found. George pleads guilty, sentence is suspended, and, on this trial of Hall, he is used as a witness by the people.

These are simply the facts as testified to by George; at least sufficiently full to present fairly the legal question now raised.

It will be seen that there is no pretense that Hall ever came to Greene county at all; indeed, there is no proof of any correspondence between himself and George while George was in Greene county. If Hall can be held at all, it is upon the theory, and that alone, that in New York city or in New Jersey he gave George these bogus bonds and directed him, generally, to go up the river and to the river towns and negotiate them, and furnishing the money to do this. Both George and Hall knew that these bonds were counterfeit; George is, therefore, a guilty actor in the transaction. Had he entered upon this mission innocently there would be no doubt of the propriety of indicting Hall in Greene county as principal, and he could have been convicted. It would then be like the case of a child without discretion, an idiot or a madman, induced, by a third person, to do a felonious act; the instigator alone is guilty, and though not present at the perpetration of the crime, he is a principal felon. This is on the common law principle " *qui facit per alium, facit per se,*" which chief justice HOMER, of Connecticut, says " is of universal application both in criminal and civil cases."

Doubtless this remark is true in civil transactions and in all cases of misdemeanors, as it is also in felonies, where the agent himself is innocent. But the law is entirely clear and

well settled that where the agent is a guilty actor in the commission of the felony, he, the agent, is the principal offender, and the one by whom he was employed or instigated, if absent, but an accessory before the fact (*The People* agt. *Adams*, 3 *Denio*, 190 ; *see opinion and cases cited, especially page* 208). This case was affirmed in court of appeals.

The same principle is held in *Wilson* agt. *The People* (5 *Parker's Cr. R.*, 120). In this case the court say, on page 129 of opinion : " That a felony may be committed through the instrumentality of others, though the principal be not present, is well settled upon the principle *qui facit per alium, facit per se,* which is as applicable to criminal as civil cases. But this, where the other, or agent, is an innocent party. Where the person employed is guilty, he is the principal, and the employer but an accessory. I speak of crimes which are felonies. In misdemeanors there are no accessories, but all the guilty actors are principals " (1 *Russell on Crimes*, 27 ; 4 *Denio*, 130).

So that it is entirely clear (this being a felony) that Hall cannot be held as principal; if held at all, it is as accessory before the fact. Now, can an accessory before the fact be indicted in Greene county, when his offense was committed in the state of New Jersey — possibly in the city of New York ? The rule is, or should be, familiar to every lawyer, that a party accused of crime must be indicted in the county where the offense was committed. As it is sometimes difficult to ascertain the exact boundary line, the law provides that there may be an indictment and conviction in any county for all crimes committed within its borders, or within 500 yards of the boundary line. Thus, a murder to-day is committed in Kingston ; the offender cannot be tried in Greene county for that offense, but in Ulster county. If, within 500 yards of the division line, a conviction could be had in either county.

This general rule has its exceptions and they are specifically pointed out. Unless some exception can be found which shall cover the case at bar, of course the general principle must prevail.

The statute which existed in England at the time of the revolution, was to the effect that an accessory must be indicted and tried in the county where his offense was committed. Subsequently this was changed and the statute, referred to by the district attorney, was enacted, giving the right to convict an accessory in the county where the principal felon might be tried. But this was after our revolution — a statute of George IV— and so has no application here. Our statute on the subject is " that the accessory may be indicted in the county where his offense was committed," &c. This, after all, is but a reaffirmance of the old English statute above referred to and in force at the time of the revolution. It is urged that the word " may," in our statute, is not mandatory — is simply permissive and was intended only as enlarging the remedy or power to punish an accessory. But this view does not help the prosecution here, as independent of this statute no authority can be found for indicting an accessory in any other than the county where the offense of such accessory was committed. But we are not left without authority on this very point. In the case of *Baron* agt. *The People* (1 *Parker's Crim. R.*, 246), it is expressly held that an accessory can only be indicted and tried in the county where his offense was committed, although the principal offense was committed in another county. This is a general term opinion of this state, WELLES, J., writing the opinion, and which was concurred in by TAYLOR and JOHNSTON, justices.

I am unable to find any case in this state or elsewhere questioning this decision, and we have no right to disregard it, whether the views meet our approval or not (*see opinion of* WELLES, J., *p.* 251). The same doctrine is held in the case of *The People* agt. *Hodges* (27 *Cal. R.*, 340). The case to which the district attorney has referred us in Alabama, in which it was held that an accessory might be indicted in the county where the principal felon committed his offense and was tried, I have not had an opportunity to examine, but presume that it was based upon a statute of that state, giving the

right so to do. As we have already seen, the general rule is that the indictment must be found in the county where the offense was committed. In a note found on page 63 of 1 *Arch. Crim. Pleadings*, this language is used : "At common law the venue should always be laid in the county where the offense is committed, although the charge is in its nature transitory, as seditious words or battery, and it does not lie on the prisoner to disprove the commission of the offense in the county in which it was laid, but the prosecutor must prove it." There is no exception to this rule, except in a few cases specifically provided for. For instance, we have a statute that one who steals property in another state, and brings it into this state, may be indicted or punished as though committed here (2 *R. S.*, 698, *sec.* 4). So an offense committed on any vessel navigating any waters of this state, may be indicted in any county through which such vessel passed on such trip (*Laws of* 1860, *chap.* 431). So of any offense committed on any railroad train (*Laws of* 1877, *chap.* 167). So an indictment for larceny may be found and presented in any county where the offender is found with the stolen property. So a receiver of stolen property may be indicted in any county where he received or has the property (2 *R. S.*, 726). I am unable to find any provision, either at common law or by statute, that excepts a case like the one under consideration. Whether it would be wise to enact such a statute, we need not consider. The court cannot be held responsible for bad laws, or for any failure of law to meet a particular case. We are to enforce the laws as they exist — to hold the scales of justice with a steady hand and an even balance, and in its application to treat all persons alike, regardless of consequences.

It follows, therefore, that Hall must be discharged, for the reason that there is no power or authority to try him in Greene county for the offense which it is alleged he has committed. We decline to direct the jury to acquit, for this might be regarded as a disposal of the case upon the merits.