## ADAMS vs. THE PEOPLE.

A. was indicted in the city of New York for obtaining money from a firm of Commission Merchants, in that city, by exhibiting to them a fictitious receipt signed by a forwarder in Ohio, falsely acknowledging the delivery to him of a quantity of produce for the use of and subject to the order of the firm. The defendant pleaded that he was a natural born citizen of Ohio, had always resided there, and had never been within the State of New York; that the receipt was drawn and signed in Ohio, and the offence was committed by the receipt being presented to the firm in New York, by an innocent agent of the defendant, employed by him while he was a resident of and actually within the State of Ohio; *held*, that the plea was bad, and that the defendant was properly indicted in the city of New York.

Where an offence is committed within this State by means of an innocent agent the employer is guilty as a principal, though he did no act in this State, and was at the time the offence was committed, in another State.

In such case the Courts of this State have jurisdiction of the offence, and if the offender comes within the limits of the State, they have also jurisdiction of his person, and he may be arrested and brought to trial.

Where an offence is committed within this State. whether the offender be at the time within the State, or be without the State and perpetrates the crime by means of an innocent agent, it is no answer to an indictment that the offender owes allegiance to another State or sovereignty.

ERROR from the Supreme Court. Adams and one Seymour were indicted in the New York General Sessions for obtaining money, by false pretences, of Suydam, Sage & Co., Commission Merchants in the city of New York. The pretence used to effect the fraud, was, as the indictment alledged, a false receipt signed by Seymour, dated at Chillicothe, Ohio, acknowledging that he (Seymour) had received from Adams a large quantity of pork and lard, irrevocably subject to the order of Suydam, Sage & Co., which, by the same receipt, he agreed to forward to them in New York, and which they were to receive for sale on commission, and to have a lien upon for

the amount of certain drafts drawn upon them by Adams against the property. The indictment alledged that the receipt was untrue, that Seymour had received no such property, and that the defendants knew it; also that Suydam, Sage & Co., upon the faith of the receipt, and the representations accompanying the same, accepted and paid the drafts.

Adams pleaded to the indictment, in substance, that he was born in Ohio, that he had always resided in that State, and had never been within the territorial limits of the State of New York; that the false receipt and the drafts mentioned in the indictment, were made and signed in the State of Ohio, and were presented to Suydam, Sage & Co., in New York, by an innocent agent of him, the said Adams, whereby they were deceived and defrauded, as alledged in the indictment, and therefore the plea insisted that he the said Adams, ought not to be criminally questioned or proceeded against in the State of New York.

On demurrer to this plea, the Sessions gave judgment in favor of the defendant, and the people removed the cause, by writ of error, into the Supreme Court, where the judgment was reversed, and the defendant ordered to further answer the indictment. *Sec 3 Denio* 190, where the pleadings are stated more in detail, and the arguments of counsel given at length.

*Geo. Wood,* for plaintiff in error.

*Ogden Hoffman,* and *John McKeon,* for the people.

GARDINER, J. No attempt was made upon the argument to controvert the reasoning of the learned Judge who delivered the opinion of the Supreme Court upon the premises assumed by him. It was however insisted, that the authority to punish on account of crimes committed within the jurisdiction of this State, depended upon the right of the State to the obedience of the criminal, and that the authority upon the one hand and the duty upon the other, was founded upon

the allegiance permanent or temporary, which the offender owed to the country within which the crime was committed.

It was therefore admitted that a crime had been committed within this State and through the instrumentality of the defendant, and the authority of the numerous cases cited to establish the position, the *actual presence* of the offender at the place where the crime was consummated was not necessary to make him amenable to the law, was also conceded; but it was urged that they were adjudications in cases between sovereign and subject in reference to the municipal law of the country in which they arose, and that they did not touch the great question of allegiance which was anterior and paramount to any municipal regulation. No direct authority was referred to establishing this doctrine. We must therefore consider it as it was argued, as a question depending upon general principles.

Allegiance binds the citizen to the observance of all laws which are promulgated by his own sovereign, not inconsistent with the laws of nature. The laws of nature as they are denominated also rightfully require obedience, not by reason of allegiance, but because they emanate from a higher authority than any human government. They are written upon the hearts of all men; exist before governments are organized; anterior of course to allegiance, "and are binding all over the globe, in all countries and at all times."

To these laws all men owe obedience, not because they are subjects, but because they are men.

Allegiance itself is modified and controlled by them.

Every political and civil power has its legal limits, no man is bound to do any act contrary to the law of nature at the bidding of his sovereign. (*Vattel. B.*, 1 *Ch.* 4 § 53–4.)

The positive regulations of particular communities, such as their revenue and usury laws, indeed the whole class of regulations which render acts in themselves indifferent, criminal by prohibition, may to some extent derive their obligation from the doctrine of allegiance—and may therefore be binding only upon the citizens and residents of that community.

But this is not so in reference to the higher laws to which I have adverted. The duty of obedience does not depend upon the allegiance of the subject, or. the laws of his sovereign, but is assumed as pre-existing.

The citizen of Massachusetts who should murder an inhabitant of this State by the discharge of a loaded pistol or by striking with a deadly weapon across the invisible line which separates the territory of the two States, would transgress a law universally binding and recognised as such by the citizens of both States. If it be admitted as contended for by the counsel for the prisoner that the offender would not violate his allegiance to his own State, he would not be the less guilty on that account. He would, notwithstanding, infringe a law he was under an obligation to obey, at all times and in all places, in New York as well as in Massachusetts.

In a word, where the law of nature prohibits an act as criminal, it is the province of the municipal law of each State to prescribe the means by which the crime is to be ascertained and the punishment to be inflicted upon the offender.

This right is indispensable to enable a State to discharge the duty of protecting its own citizens. It is also exclusive: "The jurisdiction of a nation within its own territory," says Chief Justice Marshall, "is necessarily exclusive and absolute and the jurisdiction of its Courts is a branch of that sovereignty."

If a citizen is injured in his person or property by a foreign government or their avowed agents, redress may be sought through his own sovereign, and if refused it would be a cause for war. But when the injury arises from the fraud or malice of a private citizen, with whom or his acts his government has no connection, and the offence is consummated in the State of which the aggrieved party is a subject, no protection can be afforded except by the punishment of the offender if found within its limits. The aggrieved person cannot make reprisals, and the government of the offender is no more responsible for the tortious act of a private citizen than for his contracts. Protection therefore the "return" or

consideration upon the part of the State for the obedience of the subject, cannot be secured at all upon the assumption that allegiance is the only ground of jurisdiction over the criminal.

The right to punish therefore it is believed, obtains in all cases where a law has been violated to which the offender owes obedience ; and secondly, where the offence is committed within the territory of the State claiming jurisdiction.

Piracy which is sometimes claimed as an exception, only confirms the general rule. Piracy is an offence against the law of nature, which is in this respect the law of nations. (*Story's Comm.* 3 *Vol. Chap.* 22 § 1153.) A pirate who is one by the law of nations may be punished in any country where he may be found. Why ? Because he has transgressed a law which he was bound to obey ; and secondly, because the offence was committed in a place in which all nations have a common right, but over which no one has exclusive jurisdiction. Each nation therefore must have the right to punish or none ; and the right is conferred upon each to prevent the escape of the offender.

Allegiance to a particular power, so far from drawing after it the exclusive jurisdiction to try and punish, is not even one of the elements necessary to confer it. A Pirate born in England where the crime is recognized and punished by the common law, (4 *Black. Comm.* 72) may be convicted and sentenced in the Courts of the United States or those of any other nation.

If a State may punish a foreigner who owes it no allegiance for acts committed on the highway of nations, there would seem to be no doubt of its jurisdiction when the offence was committed by *any means* within its own territory. Robbery upon land is as much opposed to the law of nature, as robbery upon the high seas. In each case the individual forfeits the protection of his government, and the difference of jurisdiction in the two cases is attributable to the right of domain, and not to the doctrine of allegiance. Vattel says that " the sovereign who is injured by the subjects of another nation, takes satisfaction for the offence himself when he meets

23

with the delinquents in his own territory, or in a free place as the open sea." (*Book* 4, *Ch.* 4, § 52.) And again, after remarking that it would be unjust to impute to the sovereign every fault committed by a subject against a citizen of another country, he says, "if the offended State has in her power the individual who has done the injury, she may, without scruple, bring him to justice and punishment." (*Book* 2, *Ch.* 6, § 75.)

In this case the prisoner admits that by means of false pretences, and with an intent feloniously to cheat and defraud, he obtained, from citizens of this State, the sum of $28,000 through the instrumentality of innocent agents. And it appears that afterwards he voluntarily came within the territory of the State where the crime was committed.

I think he may be rightfully punished. He has violated a law to which he owed obedience, for it was written upon his own conscience, and obligatory every where. To that law the statute of this State has affixed a penalty, to be enforced in her own tribunals for the protection of her own citizens.

The immunity he enjoyed at home from arrest and punishment, was not due to him as a criminal, or as a citizen of Ohio, but because he had injured no one whom that State was bound to protect, and because the inviolability of its territory was an essential to its sovereignty and independence. The prisoner knew that through his agent he was defrauding those who were entitled to the protection of our laws, and he cannot be permitted to say that he did not know that it was unlawful to cheat in New York as well as in Ohio.

BRONSON, J. As I have not found time to write out an opinion, I shall content myself with stating the conclusions at which I have arrived.

That a crime has been committed within this State, and by the defendant is not denied by his counsel. But they insist that he cannot be punished here, because he was a citizen of Ohio, and owned no allegiance to this State. I am of opinion that it is not a matter of any importance whether the defendant owed allegiance to this State or not. It does not

Adams *v.* The People.

occur to me that there are more than two cases where the question of allegiance can have anything to do with a criminal prosecution. First, where the accused is charged with a breach of the duty of allegiance, as in cases of treason; and second, where the government proposes to punish offences committed by its own citizens beyond the territorial limits of the State. When the offence, not being treason, is committed within this State, the question of allegiance has nothing to do with the matter.

It is not necessary to notice the peculiar relation which a citizen of one of the United States sustains to the other States; for if a subject to the British Crown, while standing on British soil in Canada, should kill a man in this State, by shooting or other means, I entertain no doubt that he would be subject to punishment here, whenever our courts could get jurisdiction over his person.

This leads me to say, that it is not necessary to inquire how the criminal can be arrested or whether he can be arrested at all. If our courts cannot get jurisdiction over his person, they cannot try him. But that is no more than happens when a citizen, who has committed an offence within the State, escapes, and cannot be found. Jurisdiction of the offence, or subject matter, and jurisdiction to try the offender, are very different things. The first exists whenever the offence was committed within this State; and the second, when the offender is brought into Court, and not before. And this is so, whether he be a citizen or not.

I am of opinion that the judgment of the Supreme Court should be affirmed.

Judgment affirmed.