THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v. HENRY H. WERBLOW, Appellant.

Crimes — grand larceny — obtaining money by false pretenses — jurisdiction — conspiracy formed in New York does not give to our courts jurisdiction to punish for a larceny abroad — counts in indictment for obtaining money under false pretenses insufficient where they state that pretenses were made and money obtained in foreign country — inconsistent counts in indictment — where case submitted to jury on some good and some bad counts, Court of Appeals, notwithstanding unanimous affirmance, will search record to determine whether good counts are sustained by evidence.

1. Under subdivision 1 of section 1930 of the Penal Law, subjecting to punishment within this State " a person who commits within this

State any crime in whole or in part," a conspiracy formed in New York does not give jurisdiction to punish for a larceny abroad merely because some overt act can be found to have been here committed in furtherance of the conspiracy, if the act is not a constituent of the executed larceny. A crime is not committed either wholly or partly in this State unless the act within this State is so related to the crime that if nothing more had followed, it would amount to an attempt, and to constitute an attempt neither combination, nor incitement, nor preparation is enough (Penal Law, § 2); the stage of fulfillment must have been reached and that of promise left behind.

2. A count in an indictment charging that defendant and his two brothers conspired to cheat and defraud a New York corporation which had a branch in London, England, in furtherance of which one brother transmitted cablegrams and messages to defendant in China and received others in return and another brother sailed to England and there received cablegrams and messages in furtherance of the project from the brother in New York and later, in execution of the conspiracy, defendant, still in China, transmitted to the London branch of the corporation forged cablegrams in the form of orders drawn by a bank in China directing payment to a fictitious person of a large sum in pounds sterling, of which the brother in London, through false and fraudulent representations, obtained payment and appropriated to his own use and to the use of those conspiring with him, does not give to our courts jurisdiction of the crime. The combination in New York may charge the participants with responsibility as principals. They are principals, however, in a crime committed upon English territory, and (if we except the acts in China) committed there in all its parts. Incitement from abroad will entail criminal responsibility here, if the crime is here committed, and this though the offender might once have been ranked as an accessory. (Penal Law, § 1930, subd. 3.) It does not follow that incitement from here will entail a like responsibility when the crime that is the subject of incitement is committed abroad. The act, not the mere word, is still the test of jurisdiction, and in this case the line was not crossed that divides execution, partial or complete, from incitement and conspiracy. (*Strassheim* v. *Daily*, 221 U. S. 280, distinguished.)

3. Another count of the indictment omits the allegations of confederacy, but also states that the false pretenses were made in London, and the money there obtained. In this count the theory is abandoned that part of the crime was in New York, within the meaning of section 1930 of the Penal Law, but an attempt is made to bring it within section 1933, by which " a person who commits an act without this State which affects persons or property within this State * * *

and which, if committed within this State, would be a crime, is punishable as if the act were committed within this State," by alleging, in effect, that the principal office of the corporation was in New York, that its business at London was a branch of the business conducted here, and that all losses sustained in the operation of the branch were in truth losses of the company itself, a domestic corporation. These allegations do not show an act in London affecting persons in New York. The larceny at London was not an act affecting any property in New York. The property, pounds sterling, was in London, and from London was transmitted to China. It was not an act affecting any person in New York, for it was not a crime against or injuring the person at all, but one directed against property.

4. The first and second counts of the indictment are on their face sufficient; one of them states that all the criminal acts were committed in New York; the other states that some of the acts were committed here and some in China and England, and if the case had gone to the jury on these counts only, defendant would have no grievance in respect of the form of the indictment. The difficulty is, however, that the case was submitted under all the counts, and what is stated in the first and second counts is contradicted by the third and fourth. These contradictory statements cannot both be true; a presumption of evidence sufficient to sustain the statements made in counts 1 and 2 would be repelled by an equal presumption that the evidence sustains the statements to the contrary in counts 3 and 4, and, notwithstanding the verdict of conviction was unanimously affirmed by the Appellate Division, this court may search the record so far as may be necessary to determine whether defendant was aggrieved by the denial of his motions to dismiss the counts that are defective, and having so done, it is held that the evidence was insufficient to sustain the inconsistent counts or to justify the inference that their allegations were accepted by the jury.

*People* v. *Werblow*, 212 App. Div. 445, reversed.

(Argued June 11, 1925; decided July 15, 1925.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 27, 1925, which affirmed a judgment of the Court of General Sessions of the Peace in the county of New York rendered upon a verdict convicting the defendant of the crime of grand larceny in the first degree,

*George Gordon Battle* and *Isaac H. Levy* for appellant. The indictment does not state facts sufficient to constitute an offense, since it does not allege that the crime was committed in New York county, and does not allege facts sufficient to show either that the crime was committed in part in the county of New York, or that the acts committed without this State affected persons or property within this State, within the meaning of section 1933 of the Penal Law. (*United States* v. *Britton*, 108 U. S. 204; *People* v. *Mills*, 178 N. Y. 284; *People* v. *Arnstein*, 211 N. Y. 585; *People* v. *Zayas*, 217 N. Y. 78; *People* v. *Licenziata*, 199 App. Div. 106; *People* v. *Inter. Nickel Co.*, 155 N. Y. Supp. 156.)

*Joab H. Banton*, District Attorney (*Felix C. Benvenga* and *Hugo Wintner* of counsel), for respondent. The courts of New York had jurisdiction of the offense. The indictment sufficiently alleges the jurisdictional facts. (*People* v. *Zayas*, 217 N. Y. 78; *People* v. *Arnstein*, 211 N. Y. 585; *People* v. *Summerfield*, 48 Misc. Rep. 242; *People* v. *Licenziata*, 199 App. Div. 106; *People* v. *Cummins*, 209 N. Y. 283; *Hope* v. *People*, 83 N. Y. 418; *Phelps* v. *People*, 72 N. Y. 365; 1 Bishop's New Crim. Pro. [2d ed.] § 381; *Connor* v. *State*, 29 Fla. 455; *State* v. *Hazzard*, 75 Wash. 5; *People* v. *Burke*, 11 Wend. 129; *People* v. *Staples*, 91 Cal. 23; *State* v. *White*, 76 Kans. 654.)

CARDOZO, J. The defendant Henry H. Werblow, and his brothers Isaac and Robert, are charged with the crime of grand larceny in obtaining money by false pretenses. The false pretenses were made and the money was paid in London, England. At that time Henry was in China, and Robert in New York. Of the parties to the combination, Isaac only was in London. The plan was laid here. The execution was in other lands.

1925.] Opinion, per CARDOZO, J. [241 N. Y. 55]

The question is whether our courts have jurisdiction of the crime.

At the outset, we do not go beyond the indictment, for, if this be sufficient, the unanimous affirmance at the Appellate Division enforces upon us the presumption that supporting evidence exists (Constitution, art. VI, § 9). The fullest statement of the facts is found in the fourth count. That being so, we put aside the others for the moment, and address ourselves to this one. A summary of its allegations will suffice without literal reproduction.

On June 14, 1922, in the county of New York, the brothers Werblow conspired to cheat and defraud the Guaranty Trust Company of New York, a domestic corporation, with its principal office in this State and a branch at London, England. In furtherance of that conspiracy, Robert, in New York, transmitted cablegrams and messages to Henry in China, and received others in return. In furtherance of the same project, Isaac sailed from New York for England, and upon his arrival at London received cablegrams and messages which were transmitted to him in continued furtherance of the project from Robert in New York. Still later, and again in execution of the conspiracy, Henry, still in China, transmitted to the Guaranty Trust Company in London forged cablegrams in the form of orders drawn by the Asia Banking Corporation of Hankow, China, and directing the payment to one Max Elliott of 31,630 pounds sterling. Thereupon at the city of London, Isaac Werblow, assuming the fictitious name of Max Elliott, falsely and fraudulently represented to the said Guaranty Trust Company of New York that there was a person named Max Elliott interested in the building of a certain bridge in China, and that he, the said Isaac Werblow, was such person and so interested; that large sums of money were due and about to become due to him from the Wuchang Provincial Government in China; that the

two cablegrams signed in the name of the Asia Banking Corporation were genuine and authentic; and that he, the said Isaac Werblow, posing as Max Elliott, was entitled to payment under them; by virtue of which false pretenses the Guaranty Trust Company at its London branch paid to him the sum of 23,350 pounds sterling, which he appropriated to his own use and to the use of those conspiring with him. There are general allegations at the end of the count that some of the acts constituting the crime were committed in New York and some in England and China, but these by fair construction characterize the acts already set forth in the same count with description of time and place, and are controlled and limited thereby.

Penal Law, § 1930, subdivision 1, subjects to punishment within this State " a person who commits within this state any crime, in whole or in part " (Cf. U. S. Rev. St. § 751, and *Davis* v. *U. S.*, 104 Fed. Rep. 136, 138). The statute announces a departure from the rule at common law. At common law, jurisdiction in respect of felonies belonged to the courts of the state where the felony was completed (1 Russell on Crimes, p. 19; 2 Stephen History Crim. Law, p. 11; *R.* v. *Keyn*, L. R. 2 Ex. Div. 63, 103). There was no jurisdiction elsewhere, no matter how material or flagitious the earlier acts might be. In larceny by false pretenses, the place where the crime is completed is the place where the money or other property was obtained by the offender (*People* v. *Adams*, 3 Den. 190; affd., 1 N. Y. 173; *Queen* v. *Ellis*, 1899, 1 Q. B. 230). There, under the rule at common law, and not at the place where the pretenses were made, was the seat of jurisdiction.

We have held that where the constituent acts which in their union are the crime, have been committed, some of them in New York and some in another State, the courts of New York, if they can catch the offender, may punish for the offense. More specifically, we have

held this in a case where false pretenses were made in New York, and the fruits obtained in Pennsylvania (*People* v. *Zayas*, 217 N. Y. 78). We are now asked to go farther and to hold that a conspiracy formed in New York gives jurisdiction under the statute to punish for a larceny abroad if only some overt act can be found to have been here committed in furtherance of the conspiracy, even though the act is not a constituent of the executed larceny.

Such a reading of the statute strains it to the breaking point. We think a crime is not committed either wholly or partly in this State unless the act within this State is so related to the crime that if nothing more had followed, it would amount to an attempt. We do not mean that this construction of the statute is the consequence of some inherent limitation upon the power of the Legislature. We assume that the Legislature may fix the beginning of the crime at a point earlier than attempt, and identify it with the initial stages of combination or incitement or preparation. The question is whether by this statute it had any thought of effecting a change so revolutionary. " An act, done with intent to commit a crime, and tending but failing to effect its commission, is ' an attempt to commit that crime ' " (Penal Law, § 2). Neither combination nor incitement nor preparation is enough (*People* v. *Mills*, 178 N. Y. 274, 284; *People* v. *Sullivan*, 173 N. Y. 122; *People* v. *Collins*, 234 N. Y. 355, 359, 360; *Regina* v. *Taylor*, 1 F. & F. 511, 512; 1 Bishop Crim. Law [9th ed.], § 729, subd. 2). Acts in furtherance of a criminal project do not reach the stage of an attempt unless they carry the project forward within dangerous proximity to the criminal end to be attained (HOLMES, J., in *Hyde* v. *U. S.*, 225 U. S. 347, 387). Where the line is to be drawn will differ with different crimes (*People* v. *Collins*, 234 N. Y. 355, 359; *People* v. *Sobieskoda*, 235 N. Y. 411, 419; cf. cases collated in 9 Halsbury Laws of England, § 539). Wherever it is drawn, it marks the division

between promise and partial or complete fulfillment (*People* v. *Collins, supra*). We may not say that any part of a crime has been committed in New York unless by something here done the stage of fulfillment has been reached, and that of promise left behind.

The argument for the People can be tested by its consequences. If combination and incitement and preparation are sufficient though not amounting to an attempt, there will ensue an extension of jurisdiction until now unknown to our law. In that view, two or more criminals confederating in New York to commit a murder in California or in China, and arming themselves in New York with weapons for that purpose, may be prosecuted here for the killing of their victim. They may even be put to death under our law, though the State of the homicide punishes by imprisonment, and nothing more, or classes the guilt of the offenders as homicide of a lower grade. *A fortiori*, of course, there may be prosecution in one county of a State for a murder in another county, if confederation and preparation can be traced to the county of the trial (cf. *People* v. *Hudson Valley Construction Co.*, 217 N. Y. 172, 176). What is true of murder will be true in like measure of rape or robbery or burglary. Such changes may come to pass hereafter. When they come, they will establish new landmarks of criminal jurisdiction (cf. Bishop, *supra*, citing *People* v. *Youngs*, 122 Mich. 292). There was indeed an attempt in England to punish an alien, one Bernard, under the rules of the common law as an accessory before the fact for the murder in Paris of several persons killed by a shell thrown by one Orsini at the carriage of Louis Napoleon (*R.* v. *Bernard*, 1 F. & F. 240; 1 Russell on Crimes, 30). The prisoner was acquitted, and the point of jurisdiction which had been reserved was not decided (See the comments of Stephen, History of Criminal Law, vol. 2, p. 13). As regards the particular crime of homicide and incitement to homicide, the question has been set

at rest in England by a statute too plain for misconstruction (24 & 25 Vict. c. 100, §§ 4 and 9, revising 9 Geo. IV, c. 31, § 7, which had been limited to the King's subjects). We are asked to declare that changes like to those of the statute of Victoria have been effected in our State, not merely in respect of homicide, but in respect of crimes of every kind. The declaration should be withheld until our Legislature has spoken with like clearness and directness. Penal Law, § 1930, subd. 3, expressly covers the case of one who while remaining in another State, incites the commission of a crime in this State. There is no equivalent provision for the converse case of one who, remaining in this State, incites the commission of a crime in another. Nothing within which such a situation can be forced is to be found in the statute unless it be the vague language of subdivision 1.

The common law in fixing the boundaries of jurisdiction drew distinctions which in this connection it will be helpful to recall between the responsibility of principals and that of accessories before the fact. A principal keeping himself in one State might be punished in a different State for a felony there committed by the hand of another (*People* v. *Adams*, 3 Den. 190, 207; affd., 1 N. Y. 173; *People* v. *Rathbun*, 21 Wend. 509, 537, 540). An accessory before the fact, absent from the jurisdiction of the crime at the time of its commission, might not be punished as accessory though he were afterwards to come there (*State* v. *Wyckoff*, 31 N. J. L. 65; *State* v. *Moore*, 26 N. H. 448; *Johns* v. *State*, 19 Ind. 421; *People* v. *Adams, supra;* HOLMES, J., in *Hyde* v. *U. S., supra*, at p. 389). Doubt existed at common law whether he was punishable anywhere (*State* v. *Moore, supra;* 1 Hale P. C. 623). In classifying principals and accessories, nice distinctions were drawn between innocent and guilty agents. One who employed an innocent agent,

*e. g.,* by the delivery of a letter embodying a false pretense through the intervention of a young child or of a servant ignorant of its contents, was held to be a principal (*People* v. *Adams, supra; People* v. *Rathbun, supra; Comm.* v. *White,* 123 Mass. 430; 1 Russell on Crimes, p. 56). He was constructively present, though hiding in another State, or so the books spoke of him in an attempt by the aid of fiction to give coherence to the rule (*Hyde* v. *U. S.,* 225 U. S. at 386; *Comm.* v. *Macloon,* 101 Mass. 1, 9). One who employed for a like purpose a servant or other representative who was a sharer in the guilty plan, was ranked as an accessory, and the servant became the principal. Constructive presence on the part of an accessory, there was none. These distinctions did not apply to misdemeanors. Responsibility as principals attached to all who had any part in offenses of that grade. So in felonies, the notion of constructive presence where a principal in one jurisdiction acted through the intervention of an innocent agent in another, was extended to cases where he acted through an inanimate instrument. A shot taking effect in this State, though fired from another, might be punished by our courts (2 Stephen, History Criminal Law, pp. 10, 11; *R.* v. *Keyn,* L. R. 2 Ex. Div. 63, 103; *State* v. *Hall,* 114 N. C. 909). A libel or false pretense, though mailed from abroad, would charge the sender with criminality where the document was received (*Matter of Palliser,* 136 U. S. 257, 265, 266, and cases there cited; *U. S.* v. *Thayer,* 209 U. S. 39, 44; *Hyde* v. *U. S., supra; Brown* v. *Elliott,* 225 U. S. 392). Changes wrought by legislation have robbed these refinements of their significance for some purposes, but not for all. The distinction between inanimate or innocent intermediaries upon the one hand and guilty ones upon the other has an importance even now in fixing the division between incitement and attempt. The thief who after writing a false pretense commits the writing to the mails directed to his victim has done an

act which tends with unbroken continuity to the attainment of the end in view. The mailing is a part of the group or aggregate of acts which together make the crime. It is, therefore, an attempt. The thief who employs a confederate to go to foreign lands and there commit a fraud, has done a wrongful act which is not yet the beginning of the crime, though it incites and prepares for the crime that is to come. The force set in motion is neither continuous nor mechanical, and its operation may be broken before the stage of attempt has been attained by the withdrawal or repentance of the guilty intermediary (*Comm.* v. *White, supra; People* v. *Adams, supra; People* v. *Collins, supra; Matter of Palliser*, *supra*).

The statutes of our State have put an end to the old distinction between principals in felony and accessories before the fact. Now all who counsel, incite or advise the commission of any crime, whether felony or misdemeanor, are responsible as principals (Penal Law, § 2). The People argue from this that counsel or incitement or advice must be a part of the crime if it entails such responsibility. The conclusion, however, does not follow from the premise. What the statute has done is to assimilate the relation of confederacy in crime to that of principal and agent (*People* v. *Bliven*, 112 N. Y. 79; *People* v. *Peckens*, 153 N. Y. 576; *People* v. *Katz*, 209 N. Y. 311, 325; *People* v. *Adams*, 3 Den. 190, at 208), though, of course, not identifying them completely (*People* v. *McLaughlin*, 150 N. Y. 365). The analogy will help us to fix the *locus* of the wrong. An employer in New York sends his servant to New Jersey with authority to close a contract or with instructions to commit a tort. No doubt the grant of power in New York must be proved in any attempt to charge the employer with liability. The fact remains, however, that the contract has been made or the tort committed in New Jersey, and nowhere

else. We find no substantial distinction between the case supposed and the one before us. The combination in New York may charge the participants with responsibility as principals. They are principals, however, in a crime committed upon English territory, and (if we except the acts in China) committed there in all its parts. Incitement from abroad will entail criminal responsibility here, if the crime is here committed, and this though the offender might once have been ranked as an accessory (*People* v. *Adams, supra*). It does not follow that incitement from here will entail a like responsibility when the crime that is the subject of incitement is committed abroad. The act, not the mere word, is still the test of jurisdiction.

Much that is said by counsel for the People would be relevant and indeed persuasive if the defendant, instead of being indicted for larceny, had been indicted for conspiracy. Conspiracy is, of course, a separate crime, and all that must be shown to establish its commission is the unlawful combination and some overt act in furtherance thereof (Penal Law, §§ 580, 583; *People* v. *Mather*, 4 Wend. 259). " There must be an overt act, but this need not be itself a criminal act; still less need it constitute the very crime that is the object of the conspiracy " (*U. S.* v. *Rabinowich*, 238 U. S. 78, 86). Indeed, there are some conspiracies that are crimes under our statute though an overt act has been omitted altogether (Penal Law, § 583). So at common law, incitement to a felony, when it did not reach the stage of an attempt, was itself a separate crime, and like conspiracy, which it resembled, was a misdemeanor, not a felony (*King* v. *Higgins*, 2 East, 5; *R.* v. *Gregory*, L. R. 1 C. C. R. 77). What was done in New York by the exchange of cablegrams or messages wherewith to inform the confederates of their parts in the drama of this crime was merely confirmation of the plot and encouragement to execute it. The line was not crossed that divides execution,

partial or complete, from incitement and conspiracy. Nothing to the contrary was held in *Strassheim* v. *Daily* (221 U. S. 280). There the crime had been consummated in Michigan, the State or district of the indictment. Jurisdiction was undoubted under the rule of constructive presence (HOLMES, J., in *Hyde* v. *U. S., supra,* and in *Brown* v. *Elliott,* 225 U. S. 392, at 403; *Comm.* v. *White, supra*). The only question was whether there existed such an element of actual presence as to constitute the defendant a fugitive from justice. Acts innocent in themselves, but related to the criminal scheme were held sufficient for that purpose. " All that is necessary to convert a criminal under the laws of a State into a fugitive from justice is that he should have left the State after having incurred guilt there (*Roberts* v. *Reilly,* 116 U. S. 80), and his overt act becomes retrospectively guilty when the contemplated result ensues " (*Strassheim* v. *Daily, supra,* at p. 285). There was no suggestion that the same acts would have served without more to establish jurisdiction for a crime completed elsewhere (*Hyde* v. *U. S.* and *Brown* v. *Elliott, supra*). Whether they would have laid such a basis we need not now consider. They approached closer to the stage of execution than the acts relied on here. Enough for present purposes that this was not the point decided.

In all that has gone before, we have been dealing with the fourth count of the indictment. We must now pass to the others.

The third count omits the allegations of confederacy stated in the fourth, but is like the fourth in stating that the false pretenses were made in London, England, and the money there obtained. In this count the theory is abandoned that part of the crime was in New York, within the meaning of Penal Law, section 1930, but an attempt is made to bring it within section 1933, by which " a person who commits an act without this State which affects persons or property within this State   *   *   *

and which, if committed within this State, would be a crime, is punishable as if the act were committed within this State." To that end, the third count alleges in effect that the principal office of the Guaranty Trust Company of New York was in the county of New York, that its business at London was a branch of the business conducted here, and that all losses sustained in the operation of the branch were in truth losses of the company itself, a domestic corporation. We think these allegations do not show an act in London affecting persons or property in New York. If they were to be given that effect, the robbery of a salesman in China or Peru would be punishable in New York if New York was the residence of the employer. The larceny at London was not an act affecting any property in New York. The property, pounds sterling, was in London, and from London was transmitted to China. It was not an act affecting any person in New York, for it was not a crime against or injuring the person at all, but one directed against property (cf. Penal Law, § 43). Section 1933 is aimed at situations of a different order altogether. It covers a libel published, let us say, in New Jersey, and later circulated in New York. It covers a nuisance created in New Jersey, and from there spreading to New York (*Comm. v. Macloon*, 101 Mass. 1, 6). There was no thought to bring within our jurisdiction every criminal act committed in another State which in its consequences might affect the pocket of some one residing within our borders. This reading of the section accords with the theory of the trial. The trial judge, as we read the record, did not submit the case to the jury under section 1933. He told them that the defendant must be acquitted unless part of the crime had been committed in New York.

The first and second counts remain. On their face they are sufficient. One of them states that all the criminal acts were committed in New York. The other states that some of the acts were committed here, and

some in China and England.  If the case had gone to the jury on those counts only, the defendant would have no .grievance in respect of the form of the indictment. The difficulty is, however, that it was submitted to them under all the counts, and that what is stated in the first and second counts is contradicted by the third and fourth. The first and second state in effect that the representations were made and the moneys paid in New York, or that some at least of those events occurred there, whereas the third and the fourth tell us that the representations were made and the moneys paid in London.  These contradictory statements cannot both be true.  We are told that it is our duty, in view of the unanimous affirmance, to presume that the evidence is sufficient to sustain the verdict (Const. art. 6, § 9).  The difficulty remains that a presumption of evidence sufficient to sustain the statements in counts numbers 1 and 2 would be repelled by an equal presumption that the evidence sustains the statements to the contrary in counts numbers 3 and 4. We think it is our duty in such circumstances to search the record so far as may be necessary to determine whether the defendant was aggrieved by the denial of his motions to dismiss the counts that are defective.

Aggrieved we think he was unless the other and inconsistent counts have evidence to uphold them.  In so holding, we do not overlook decisions to the effect that where a case is submitted on several counts, and a general verdict rendered, the verdict will stand if any of the counts are good (*Hope* v. *People,* 83 N. Y. 418, 424; *People* v. *Cummins,* 209 N. Y. 283, 296).  This was said of cases where the counts were consistent with one another, charging a single crime, though in varying forms and phrases.  On the other hand, a different rule has been applied where the crimes set forth in the several counts are different or inconsistent.  The distinction was pointed out in *Phelps* v. *People* (72 N. Y. 365, 373, 374, citing *Wood* v. *People,* 59 N. Y. 117).  One might as

well say in a civil action for damages that error in the denial of a motion to dismiss one cause of action would be disregarded as unsubstantial if the motion was properly denied as to a different cause of action. Here the several counts are not simply " different versions of the same transaction " (*Phelps* v. *People, supra*). They are versions of different transactions in that they are contradictory of each other. The denial of the motion to dismiss the counts that are defective was equivalent to a ruling that the facts there stated, if proved, made out the commission of a crime within the jurisdiction. The charge as a whole shows that this is no forced deduction, but that the case went to the jury on that theory and no other. In such circumstances, though the error in the charge is imperfectly challenged by exception, the error in sustaining the defective counts of the indictment ought not to be disregarded as immaterial unless there is evidence sustaining the inconsistent counts and justifying the inference that the allegations of those counts were accepted by the jury (*Wood* v. *People*, 59 N. Y. 117, 122). Evidence may be examined despite the unanimous affirmance, so far as such examination is necessary to determine the materiality of error (*D'Aurio* v. *L. I. R. R. Co.*, 240 N. Y. 241; *Matter of Santrucek*, 239 N. Y. 59, 62).

We find in the record one act and only one that reinforces in any degree the overt acts enumerated in the fourth count of the indictment. There is evidence that Isaac Werblow, before setting sail for England, bought from the Guaranty Trust Company of New York at its principal office in this State a draft upon its London branch for 100 pounds sterling in favor of Max Elliott, which name he then assumed. Upon his arrival in England, this draft was placed to his credit in the London branch, and was used to open his account, and also, it is possible, to accredit him in some degree. We cannot find, however, that the delivery of this draft in the

county of New York was a part of the crime as distinguished from an act of preparation. The situation would not be different if a murderer had provided himself with a weapon or a thief with a disguise or a swindler with a sum of money that might lend an air of respectability. The draft like a weapon was capable of being used in ways and for purposes that would make it an instrument of crime. It did not become such an instrument until devoted to the use.

The defendant should answer for his crime to the courts of the sovereignty within whose territorial dominion it was committed in all its parts.

Other rulings complained of by the defendant have been considered, but no error has been found in them.

The judgment of the Appellate Division and that of the Trial Term should be reversed, the third and fourth counts of the indictment dismissed, and a new trial ordered upon the first and second counts.

HISCOCK, Ch. J., McLAUGHLIN, ANDREWS and LEHMAN, JJ., concur; CRANE, J., dissents; POUND, J., absent.

Judgments reversed, etc.