Mitchell D. Schweitzer, J.
Defendant is charged with two crimes of asking.for and receiving payments of money in New York County in consideration for acts relating to the performance of his office while Commissioner of Public Safety of the City of Long Beach, in Nassau County (Penal Law, § 1826, Taking unlawful fees). His motion is based upon three claims. The first is that no legally significant act relating to the crimes set forth in the indictment occurred in New York County so that jurisdiction in New York County is lacking. Defendant next urges that the evidence presented against him before the Grand Jury consists solely of the uncorroborated testimony of an accomplice and is, accordingly, insufficient in law. Defendant’s final claim is that the payments allegedly received by him did not relate to matters over which, as required by section 1826 of the Penal Law, he could exercise any official duty or discretion; that is, the purchase of parking meters on behalf of the City of Long Beach.
The charge in each count of the indictment is that defendant, in New York County, “ asked for, received, and consented and agreed to receive ’ ’ unlawful fees from an alleged accomplice,Jerome Robinson, and the Duncan Parking Meter Division of Motor Products Corporation. The first count additionally charges that unlawful fees were also taken from a related entity, Duncan Parking Meter Corporation (referred to hereafter as Duncan). The substance of both counts is that the defendant, as Commissioner of Public Safety of the City of Long Beach, agreed to exercise the authority of his office on behalf of the afore-mentioned corporations in order to promote the sale of between 1,500 to 2,000 of their parking meters to the City of Long Beach. The first count charges the defendant with having committed the crime in New 'York County between January, 1957, and January 8, 1960, and that he received the sum of $23,500 for his criminal efforts during that period. The second count charges the defendant with the same crime in New York County but limits itself to the specific transaction reflected by the last payment of $5,875 made and received on or about January 8, 1960, the sum paid to the defendant in connection with this transaction is embraced in the first count.
*1037 An examination of the Grand Jury testimony reveals (lint the defendant entered into an agreement in Chicago, Illinois, with Robinson whereby he would induce and cause the City of Long Beach to purchase a certain number of parking meters from the Duncan Corporation for which intervention the defendant would receive the sum of $23,500. It is contended by the People that, in order to disguise the illegality of the transaction, the defendant concocted a scheme whereby he would give a licensing agreement for the manufacture and distribution of a cigarette lighter, allegedly invented by him, to Duncan. Royalty payments to the defendant under the supposed license would actually be for the defendant’s co-operation and assistance in promoting the sale of parking meters to the City of Long Beach. Pursuant to this arrangement, the Duncan corporations, on a periodic basis, mailed “ royalty ” checks to the defendant in Nassau County from their offices in Chicago, Illinois. To further camouflage these disbursements, the defendant caused to be created a corporate entity — the 1176 Broadway Corp’n — fully under his control, as the purported owner and licensor of the cigarette lighter patent. While this corporation had its principal place of business in the City of Long Beach, and its certificate of incorporation was filed in Nassau County, its licensing agreement with Duncan was signed by two dummy officers of the corporation (not the defendant) in New York County. The only other vestiges of connection of New York County to the crimes charged are that corporate subscribers (not the defendant) signed the certificate of incorporation of the 1176 Broadway Corp’n in New York County, and that its certificate of dissolution was likewise signed in New York County by one of its corporate officers (not the defendant). It is upon these contracts within New York County that the People’s claim of jurisdiction is based.
I am unable to conclude that these incidents afford any basis in law or policy for the intervention of authorities so remote from the events of the completed crime, so distant from the center of activities of the persons charged with its commission, and so removed from the public interest sought to be corrupted.
At common law, jurisdiction to prosecute crime was entirely dependent upon the occurrence — within a single county — of all the elements constituting the offense. Considerations of locality and vicinage, born of a society wherein local authority predominated, and movement was limited, produced juridical concepts restricting the power of each enclave to its own environs (16 J. Crim. L. & Criminology, pp. 316-360, Blnme, The Place of Trial of Criminal Cases, 43 Mich. L. Rev. 59). Despite the pres *1038 ent day centralization of government, the diminished importance of land as the source of political and economic duty and the immeasurably greater mobility of people, the concept of locality as a basis for jurisdiction remains with us to a very great degree (Code Crim. Pro., §§ 22, 284, subd. 4). Insofar as our criminal law is concerned, however, there has been within the last century some relaxation of the rigors of the past respecting jurisdiction, so that the prosecution of crime no longer depends upon the commission within a single county of all the ingredients of the offense. These revisions, however, by no means abandon the concept of locality as a basis for jurisdiction. Thus, it is now provided in section 134 of the Code of Criminal Procedure, that: ‘ ‘ When a crime is committed, partly in one county and partly in another, or the acts or effects thereof, constituting, or requisite to the consummation of the offense, occur in two or more counties, the jurisdiction is in either county.”
The foregoing statutory language, which came into our laws approximately 85 years ago, allows that the defendant may be prosecuted in New York County if the crimes charged were either “ partly ” committed there or the acts or effects thereof, “constituting” or “requisite” to the consummation of the offense occurred in New York County. While this terminology appears at first glance to be clear enough, difficulty is encountered as soon as one undertakes to determine what standard is to be applied in discovering the parts of which a crime may be comprised where that crime is said to have occurred “ partly in one county and partly in another ”; or which of all the varied “ acts or effects ” relating to a crime are those which, in law, constitute, or are requisite, to its consummation. On matters such as these, this relatively ancient and inartisically drawn draft is silent.
A review of the authorities on these points, however, discloses that not every act, occurrence, or effect in some way connected with the commission of a crime is jurisdictionally significant (Matter of Murtagh v. Leibowitz, 303 N. Y. 311 [1951]; People v. Spivak, 237 N. Y. 460 [1924]; People v. Zimmer, 220 N. Y. 597 [1917], affg. 174 App. Div. 470; People v. Steinberg, 2 A D 2d 701 [2d Dept., 1956]; People v. Conforti, 72 N. Y. S. 2d 458 [Kings County Ct., 1947]). For an act- or effect to be accorded significance, it must be established that the alleged jurisdictional incident was “ essential in the consummation of the crime alleged in the indictment,” (People v. Mitchell, 49 App. Div. 531, 535 [4th Dept., 1900], aff’d. 168 N. Y. 604), or constituted “ one or more of [the] substantive and material parts ” of the crime (People v. Nicoll, 3 A D 2d 64, 69 *1039 [4th Dept., 1956]). Thus, it was in Matter of Murtagh v. Leibowitz (supra) that the Court of Appeals concluded that the crime of neglect of duty on the part of a public officer could occur only in New York County, the county where the neglected duty was required to be performed. The fact that the performance of that duty also required the defendant to investigate alleged criminal conditions occurring in Kings County — which investigation the defendant did in fact conduct — was insufficient to extend jurisdiction to the latter county. In short, the defendant’s conduct in, and relationship to events in Kings County, while of historical and evidentiary relevance, constituted no substantive or material element of the crime charged. In view of the fact that the Court of Appeals in Matter of Murtagh v. Leibowitz (supra) reversed the order of the Appellate Division denying a writ of prohibition, the opinion of the dissenters in the latter court (Johnston and MacCrate, JJ.) takes on particular significance (Matter of Murtagh (278 App. Div. 512 [2d Dept., 1951]). On the point in question, Justice Johnston wrote (p. 515): “In my opinion, to come within section 134 of the code, the act in question must be requisite to the consummation of the offense defined in the statute. (People v. Mitchell, 168 N. Y. 604, 607, 608.) If the act is not part of the offense defined in the statute, it is not ‘ requisite to the consummation of the offense ’, even though it may be an incident * * * of the crime charged.” (Emphasis added.)
Further support for the view that acts, to be jurisdietionally significant under section 134, must be substantively essential to the commission of a crime, is derived from People v. Fowler (152 N. Y. S. 672 [Sup. Ct., N. Y. County, 1914]). In this case, the defendant, in Onondaga County, extorted a payment of money in the form of a check on an Onondaga bank. The check was indorsed for deposit at a bank in New York County from which it was sent to a correspondent bank in Albany, which ultimately caused the Onondaga bank to pay the item. The tainted fund originally deposited in the New York County bank was thereafter drawn upon in New York County. In denying the existence of any jurisdiction to prosecute for the crime of extortion in New York County, the court wrote concerning the events occurring there (pp. 678-679): “ It is obvious that none of these acts is a constituent element of extortion. None of them constitutes any part of the offense. Nor were any of these acts ‘ requisite ’ to the consummation of the offense. The word ‘ requisite ’ here means, necessary, essential, indispensable. While these acts were steps taken by defendant to realize the value of the check, and could be shown on the trial, they were *1040 nevertheless mere incidents in the history of the check, and not necessary, essential, or indispensable to the consummation of the crime.”
Additional support for these conclusions is derived from Bishop in his work on Criminal Law (7th ed., vol. 1, § 116) which is cited with approval in People v. Thorn (21 Misc. 130 [Ct. of Gen. Sess., N. Y. County, 1897]). On the subject of jurisdiction Bishop wrote: 11 where a crime is really committed, a part in one county and part in another, the tribunals of either may properly punish it, provided, that what is done in the county which takes the jurisdiction is a substantial act of wrong, and not merely some incidental thing, innocent in itself alone.” (Emphasis added.)
From all of the foregoing, it seems apparent that the acts claimed to have occurred in New York County in connection with the crime charged, were as in the language of the Fowler case (p. 679) “mere incidents in the history [of the offense] and not necessary, essential, or indispensable to the consummation of the crime ”. The crime for which the instant defendant is indicted is the taking of unlawful fees. The agreement to take these fees was made in Chicago and the receipt of the illicit payments took place in Nassau County, where the defendant received the bogus royalty checks. These events together constituted the crimes charged and proof of the facts concerning them alone, would satisfy the requirements of legal sufficiency. While what occurred in New York County may have the effect of lending detail to the ultimate acts constituting the crime in Nassau County, the events which transpired here were in themselves neither criminal on their face nor substantive elements of the offense as defined by section 1826 of the Penal Law. Falling short of these qualities, the acts depended upon should not supply the basis for so important a finding as jurisdiction, unless that concept, as derived from the common law, is to be no more than the means by which random localities may intervene in the affairs of political subdivisions over which they have no lawful concern. Where, as in this case, the events relied upon for jurisdictional support show no recognizable impact upon the persons or property of this county, and no bearing upon the public health, morals, or decency of the community here situated (cf. Penal Law, § 1933) the conclusion reached seems all the more justifiable. Expressed somewhat differently, in the terms thought significant by Bishop, what was done in New York County constituted no “ substantial act of wrong ” and was, at best, “ some incidental thing, innocent in itself alone ” (supra). *1041 In the circumstances presented, jurisdiction to prosecute this defendant never vested in the courts or authorities of this county.
While I have chosen to rest my determination upon the language of section 134 of the Code of Criminal Procedure and the interpretation given to this provision by our courts, I believe my position derives considerable additional support from the cases of People v. Fein (292 N. Y. 10 [1944]), and People v. Werblow (241 N. Y. 55 [1925]), both of which are cited in the defendant’s memoranda. Under the rule of the Fein case, it is of no jurisdictional consequence that acts occurring in one county operate to bring a crime to its completion elsewhere, if those acts do not in law reach the level of an attempt to commit the complete crime. For the acts in question here to have satisfied that test, they would have had to carry “ the project forward within dangerous proximity to the criminal end to be attained” (People v. Werbloiv, 241 N. Y. 55, 61 [1925]). “ Neither combination nor incitement nor preparation ” would have been enough (id., p. 61). At best, the contractual and incorporative events occurring in New York County were preparatory, and supplied no immediate point of departure from which the crime charged would, of necessity, have eventuated.
It is urged by the People that the Fein case is sui generis in that the crime involved there was criminally concealing and withholding property which, it is said, is capable of commission only at a single place. Whatever merit may inhere in this view, it is nevertheless clear that the Court of Appeals reached its decision in Fein by explicitly relying upon its previous decision in People v. Werblow (supra). This is crucially significant for the reason that in Werblow, the court had before it subdivision 1 of section 1930 of the Penal Law, a statute akin to section 134 of the Code of Criminal Procedure. The only difference between these two sections for the purposes of this case, is that subdivision 1 of section 1930 required the Court of Appeals to decide whether certain acts committed in New York State, which eventuated in a crime completed in England, constituted a crime committed “in part” in New York. The court in Werblow concluded that a crime occurring extraterritorially could occur in New York only if what occurred here constituted an “ attempt.” The heavy reliance placed by the Court of Appeals in Fein (a case involving only inter-county considerations) upon the Werblow “ attempt ” rationale is convincing proof that section 134 of the Code of Criminal Procedure, and subdivision 1 of section 1930 of the Penal Law require a common interpretation with .respect to the issue of crimes committed “partly” (or “in *1042 part ”) in one place, and “ partly ” (or “ in part ”) in another. The Werblow and Fein cases when taken together, as they ¡must be, would therefore appear to require the conclusion that the acts committed in New York County must have constituted an attempt to commit the crime of taking unlawful fees before jurisdiction here could attach. As already indicated herein, if the Fein-Werblow “ attempt ” test is to be applied, the events transpiring in New York County fall far short of constituting an attempt to commit the crimes charged. Indeed, if the “ attempt ” test of the Fein and Werblow cases is to be applied to the facts herein, then the instant case is on all fours with the language of Judge Cakdozo in People v. Werblow (pp. 70-71): “ We cannot find, however, that the delivery of this draft in the County of New York was a part of the crime as distinguished from an act of preparation. The situation would not be different if a murderer had provided himself with a weapon or a thief with a disguise or a swindler with a sum of money that might lend an air of respectability. The draft like a weapon was capable of being used in ways and in purposes that would make it an instrument of crime. It did not become such an instrument until devoted to the use.”
It is urged in the argument presented by the People that at any place where “ some part ” of a crime is committed, the jurisdiction to prosecute that crime attaches. In support of this argument, the People cite the cases of People v. Licenziata (199 App. Div. 106 [2d Dept., 1921]), and People v. Dimick (107 N. Y. 13 [1887]), Neither of these cases is inconsistent with the court’s view here that conduct, to be jurisdictionally pertinent, must constitute a substantive element of the crime. Thus, in Licensiata, which involved a prosecution for misdemeanor manslaughter tried in Kings County for a death occurring elsewhere, the Appellate Division, Second Department, was careful to point out that the misdemeanor underlying the homicide — the purchase of methyl alcohol with the intention of having it sold for consumption as a beverage — was committed in Kings County. The described purchase and possession in Kings County, without doubt, constituted a substantive and material element of the crime of misdemeanor manslaughter.
In the Dimick case (supra), which involved a prosecution for obtaining property under false pretenses, jurisdiction was found in the county where the false pretenses were uttered. Proof of false pretenses was essential to the commission of this form of larceny and clearly constituted a substantive element of the offense charged as opposed to a mere act of preparation removed from the core of the crime (pp. 33-34).
*1043 The case of People v. Megladdery (40 Cal. App. 2d 748 [1940]), also relied upon by the People, is similarly inapposite. "While that case involves the construction of a statute virtually identical to our section 134, and employs dictum extending the California statute to acts which are not essential to the commission of a crime, the facts and other language in the case make it clear that the payment of money to the alleged agent Geary, in Alameda County, was itself a substantial criminal act done in furtherance of the crime of soliciting, asking for and agreeing to receive a bribe, which the defendants had entered into with one Bent in San Francisco. At all events, the court in Megladdery recognized that the view propounded by it respecting the substantive essentiality of jurisdictional conduct was at odds with the rule on this subject prevailing in other jurisdictions (id., p. 77). As already revealed, the California rule — if such it is — is in conflict with our own and, accordingly, affords no persuasive authority.
In view of the court’s disposition of the indictment based upon a fatal lack of jurisdictional nexus, I find no need to explore the other challenges to the indictment.
In dismissing this indictment, the court is mindful of the vigor and scholarly care with which both sides herein have presented their arguments. While the decision arrived at is the result of intensive inquiry into the merits alone, it is worthy of comment that the result reached will prevent the commencement of a lengthy trial, the results of which — if ending in conviction— would, as indicated, very probably require a reversal by our appellate courts. In the present posture of events, it is possible for the People, if they are so advised, to move for a review of this decision — a remedy not available to the defendant. Only after a protracted trial consuming the resources of the parties and the court would the defendant have an opportunity to secure what amounts to a threshold decision fully dispositive of the case. The motion to dismiss the indictment is granted.