The People of the State of New York, Appellant, *v.* Philip B. Kohut, Respondent.

First Department, January 18, 1966.

*Burton B. Roberts* of counsel (*H. Richard Uviller* and *Milton M. Stein* with him on the brief; *Frank S. Hogan, District Attorney*), for appellant.

*Maurice Edelbaum* for respondent.

Botein, P. J. An indictment found against defendant by the Grand Jury of New York County charged him with the crime of taking unlawful fees in violation of section 1826 of the Penal Law. Defendant moved to dismiss the indictment on various grounds, only one of which was considered by the court and need be considered here; namely, that New York County lacked jurisdiction to indict since the crime, if any, was committed in Nassau County. The People, in opposing the motion, argued that the venue was properly laid in New York County by reason of section 134 of the Code of Criminal Procedure, which reads as follows: "When a crime is committed, partly in one county

and partly in another, or the acts or effects thereof, constituting, or requisite to the consummation of the offense, occur in two or more counties, the jurisdiction is in either county.'' After examining the Grand Jury minutes the court held the indictment jurisdictionally defective and dismissed it. The People appeal.

The indictment relates to a period during which defendant was Commissioner of Public Safety of the City of Long Beach, Nassau County. His alleged misfeasance is that he '' asked for, received and consented and agreed to receive '' substantial sums to influence the city to purchase parking meters from Duncan Parking Meter Corporation and its successor in interest. As gleaned from the Grand Jury minutes, the elements of the People's case relevant to the present appeal are in substance as follows: Defendant and one Robinson, Duncan's chief officer, came to their illicit understanding in Chicago, where Duncan's office was located. The arrangements between them for payment of the unlawful fees contemplated the execution of a sham licensing agreement by which defendant would license Duncan to manufacture and vend a cigarette lighter purportedly invented by defendant. In purported consideration Duncan would pay defendant royalties computed on the number of lighters sold, with the proviso, however, that a minimum annual amount would be payable in any event.

The executed license agreement named 1176 Broadway Corporation as licensor. Defendant was the sole stockholder of this corporation. Duncan in fact manufactured no lighters, but it transmitted the annual minimum payments called for by the agreement to defendant in Nassau County.

On behalf of 1176 Broadway Corporation the license agreement was executed in New York County; that fact is the foundation of the People's jurisdictional claim. A friend of defendant maintained an office in Manhattan in which three women were employed. At defendant's request their employer had asked them to act as the incorporators of Broadway and they had signed the certificate of incorporation. Similarly, a number of months later, copies of the license agreement were placed before two of these employees, which they signed as president and as secretary of Broadway and which also bear the signature of a notary public having an office in the same building. The employee who signed as secretary also signed a certificate that the board of directors of the corporation had duly adopted a resolution authorizing the corporate officers to execute the license agreement. After execution of the copies of the agreement on behalf of Broadway they were evidently sent to Duncan

in Chicago for execution by that corporation; but how or from where they were thus transmitted does not appear.

Execution of the license agreement was plainly an integral part of the criminal scheme — both the method of effecting the unlawful payment and the means of concealing complicity — and in any pragmatic sense an act " requisite to the consummation of the offense." In a legal sense, however, it is contended that the act is not within the compass of the quoted words, since execution of the license agreement was neither criminal on its face nor a substantive element of the offense as defined by statute. Concretely, section 1826 of the Penal Law is directed to the public officer " who asks or receives, or consents or agrees to receive " the unlawful fees. The substantive elements of the offense relevant here are, on the one side, asking, consenting or agreeing to receive — acts occurring in Illinois — and, on the other, receiving — acts occurring in Nassau County. Signing the license agreement, the argument goes, formed no part of any of these acts, was therefore not a substantive element of the offense, and accordingly was not an act requisite to consummation of the offense within the intendment of section 134, notwithstanding it was essential to the carrying out of the offense as conceived and plotted. While the considered opinion below upholds such an interpretation of section 134, it seems to us unduly narrow.

Section 134, to be sure, has often been construed to confer jurisdiction where the ultimate commission of the offense has been preceded by an act in another county which by the very definition of the offense is essential to its commission. Thus, when the Penal Law provided that a person is punishable " who, under the promise of marriage, seduces and has sexual intercourse with an unmarried female of previous chaste character," it was held that an indictment which alleged commission of the seduction and intercourse in Jefferson County could be found by a Grand Jury in Oswego County because the promise of marriage was there made (*People* v. *Crotty,* 55 Hun 611, opn. in 30 N. Y. St. Rep. 44). In larceny by false pretenses, " the place where the crime is completed is the place where the money or other property was obtained by the offender * * *. There, under the rule at common law, and not at the place where the pretenses were made, was the seat of jurisdiction " (*People* v. *Werblow,* 241 N. Y. 55, 60). But by virtue of section 134 the seat of jurisdiction has been extended to include the place where the false pretenses were made (*People* v. *Wicks,* 11 App. Div. 539, affd. 154 N. Y. 766; *People* v. *Hudson Val. Constr. Co.,* 165 App. Div. 626, affd. 217 N. Y. 172; *People* v.

*Deinhardt,* 179 App. Div. 228; 22 C. J. S., Criminal Law, pp. 473, 474). Similarly, where a statutory definition of manslaughter in the first degree requires that the homicide be committed by a person engaged in committing or attempting to commit a specified type of misdemeanor, the county in which the misdemeanor was committed or attempted is a proper place of trial although the death occurred elsewhere (*People* v. *Licenziata,* 199 App. Div. 106; cf. *People* v. *Mitchell,* 49 App. Div. 531, affd. 168 N. Y. 604).

In each of these cases the acts within and without the county of indictment may properly be termed " the *constituent* acts which in their union are the crime " (*People* v. *Werblow,* 241 N. Y. 55, 60, *supra*; emphasis added) ; and there is no reason to believe that the decisions would have differed had section 134 omitted reference to acts " requisite to the consummation " of the offense and confined itself to acts " constituting " the offense. Doubtless each of the acts " constituting " the offense may also be said to be an act " requisite to the consummation " of the offense. The expressions, however, are not textually synonymous, and, since the enactment of section 134 had the remedial purpose of overcoming early common-law restrictions found hampering proper administration of the criminal law (see *Matter of Murtagh* v. *Leibowitz,* 303 N. Y. 311, 316; *People* v. *Kastel,* 221 App. Div. 315, 317, affd. 250 N. Y. 518), they should not be forced into an identity of meaning. If a person performs " an overt act which is and is intended to be a material step toward accomplishing the crime "— to adopt language of Justice HOLMES in *Strassheim* v. *Daily* (221 U. S. 280, 285) — the conclusion that the act is " requisite to the consummation of the offense " is consonant both with the text of section 134 and with its policy.

Nor does the conclusion lack decisional support. Courts have frequently remarked that the site of preparation and planning of the crime, when different from the site of its commission, presents what is tantamount to a section 134 situation (*People* v. *Werblow,* 241 N. Y. 55, 62, *supra*; *People* v. *Hudson Val. Constr. Co.,* 217 N. Y. 172, 176, *supra*; *People* v. *Licenziata,* 199 App. Div. 106, 110, *supra*; *People* v. *Thorn,* 21 Misc. 130, 132). In *People* v. *Britton* (134 App. Div. 275) trustees and officers of a loan compay which had its office in Kings County were indicted in that county for " felonious misappropriation of moneys in the possession, custody and control of defendants as bailees, servants, attorneys, agents, clerks and trustees " of the loan company. Their larcenous scheme was carried out in the following manner. Drafts, drawn upon them by a mining company

in which they were interested, were sent to a bank in Manhattan for collection. The loan company's treasurer, by defendants' direction, took the money from the cash drawer and either gave it to a messenger or he himself took it to the bank in Manhattan where the drafts were, and paid them with the cash. Defendants would replace the moneys with worthless checks which were carried as cash. On appeal from their conviction the court disposed of the question of jurisdiction as follows (p. 280): "It is next objected that the offense was not committed in the county of Kings where the office of said corporation was located; but that, if at all, in the county of New York where the money was paid over to take up the drafts. But there can be no doubt that the crime was partly committed in the county of Kings within the meaning of section 134 of the Code of Criminal Procedure. The crime was consummated when the money was turned over to the bank in New York in payment of the drafts. The first act, however, was the taking of the money from the cash drawer, pursuant to the instructions of the defendants, for the purpose and with the intention of misappropriating it."

The California Penal Code includes a provision virtually duplicating section 134. Under that provision, it was argued in *People* v. *Megladdery* (40 Cal. App. 2d 748, 774): "a particular county cannot have jurisdiction over an offense unless some act which is a necessary element of the offense is committed in that county". The court replied to the argument as follows (pp. 774–775): "The interpretation contended for by respondent would completely disregard the phrase ' or the acts or effects thereof constituting or requisite to the consummation of the offense ' contained in the section. Obviously, the phrase, ' or requisite to the consummation of the offense ', means requisite to the completion of the offense — to the achievement of the unlawful purpose — to the ends of the unlawful enterprise. By the use of the word ' consummation ' the legislature drew a distinction between an act or an effect thereof which is essential to the commission of an offense, and an act or effect thereof which, although unessential to the commission of the offense, is requisite to the completion of the offense — that is, to the achievement of the unlawful purpose of the person committing the offense."

We do not read *People* v. *Fein* (292 N. Y. 10) — heavily relied on by defendant — as determining that section 134 is inoperative unless the acts to which it refers reach at least to the level of a criminal attempt. The *Fein* defendants were indicted and

convicted in New York County for there concealing and withholding stolen merchandise which had been physically concealed and withheld in Kings County. The submission of the People to the Court of Appeals made no mention of section 134; it was confined to the argument that defendants "exercised in New York County such domination and control over the stolen merchandise concealed in Kings County as to amount to *constructive* possession of the property in New York County" (p. 13). In rejecting the argument the court stated that it was applying the test suggested in *People* v. *Werblow* (*supra*). The court's task in *Werblow*, a larceny case, however, was to determine the scope of subdivision 1 of section 1930 of the Penal Law which subjects to punishment in this State, "A person who commits within the state any crime, in whole or in part". The People had asked the court, in its words, "to hold that a conspiracy formed in New York gives jurisdiction under the statute to punish for a larceny abroad if only some overt act can be found to have been here committed in furtherance of the conspiracy, even though the act is not a constituent of the executed larceny" (p. 61). Refusing, the court concluded that "a crime is not committed either wholly or partly in this State unless the act within this State is so related to the crime that if nothing more had followed, it would amount to an attempt" (*id.*).

We do not discuss at any length the applicability here of the extension by the *Fein* court of such a test to acts wholly intrastate because the reach of section 134, which confers jurisdiction for acts "requisite to the consummation of the offense", is much broader than that of subdivision 1 of section 1930. Only by deleting the above-quoted clause could the contracted scope of the truncated remainder be compared with subdivision 1 of section 1930. And the very fact that the text of section 134 must be mutilated by a form of Procrustean surgery in order to match that of subdivision 1 of section 1930, emphasizes that its scope is broader.

In *People* v. *Buffum* (40 Cal. 2d 709, 717), the California Supreme Court, although citing *Werblow* and coming to the same conclusion, pointed out that a statute such as section 1930 of the Penal Law presents questions different from those arising in venue cases. After expressly stating that under the California statute construed in the *Megladdery* case (*supra*) "venue may lie in a particular county even though the acts done there are not sufficient, considered alone, to constitute an attempt," the court went on to say: "Moreover, the courts,

16

in construing the venue statutes, obviously are not limited by the operation of the general principles, discussed above, that a state ordinarily does not impose punishment for acts done in other jurisdictions and that, in the absence of a contrary intent, its statutes will not be read as seeking to regulate conduct beyond its own borders."

In sum, the question under the Penal Law is whether a person is liable to punishment in New York at all. The question under the Code of Criminal Procedure is where shall a person liable to punishment in New York be indicted and tried. The questions are not the same and it is to be expected that different considerations may control the answers.

The order entered on June 21, 1965 should be reversed and the motion to dismiss the indictment denied.

VALENTE, McNALLY, EAGER and STALEY, JJ., concur.

Order entered on June 21, 1965 unanimously reversed, on the law, and defendant's motion to dismiss the indictment denied.